**IN THE UNITED STATES DISTRICT COURT**

FOR THE EASTERN DISTRICT OF TEXAS

MARSHALL DIVISION

**Joseph Anthony Reyna (JoeCat®),**

Plaintiff,

v.

**LIVE NATION ENTERTAINMENT, INC.;**

**TICKETMASTER LLC;**

**ALLIANZ GLOBAL RISKS US INSURANCE COMPANY;**

**OAK VIEW GROUP, LLC;**

**AND JOHN DOES 1–50,**

Defendants.

Civil Action No. 2:25cv1179

**VERIFIED MASTER COMPLAINT**

WITH INCORPORATED PATTERN EVIDENCE,

SUPPLEMENTAL PUBLIC-RECORD AUTHORITY,

AND REQUEST FOR JUDICIAL NOTICE

Plaintiff alleges:

## I. INTRODUCTION

1.  This is an action for declaratory, injunctive, and monetary relief arising from a national pattern of monopolistic exclusion, digital deception, refusal-to-deal retaliation, venue coercion, misrepresentation, and creator-exploitation executed by Defendants for more than a decade.

2.  The conduct challenged here is not speculative. It has been repeatedly documented by multiple Attorneys General, the U.S. Department of Justice, municipal contracting authorities, federal filings, industry experts, consumer-protection regulators, and affected creators. These independent public records form the backbone of this Complaint.

3.  All exhibits referenced herein are provided to the Court on the accompanying **blue physical media drive**, labeled *Exhibit Drive A: Public-Record Evidence*. Each exhibit is self-authenticating under Federal Rule of Evidence 902(5) and subject to judicial notice under Rule 201(b)(2).

4.  As shown through the uniformity of consumer narratives, government findings, contract structures, retaliation incidents, insurance practices, and creator-side exploitation, Live Nation and Ticketmaster maintain unlawful dominance across the live-events marketplace. That dominance is enforced not only against rival ticketers and venues, but against artists, consumers, and the creative labor pipeline itself.

## II. JURISDICTION AND VENUE

5. Jurisdiction is proper under 28 U.S.C. §§ 1331, 1337, and the Clayton Act.

6. Supplemental jurisdiction exists under § 1367 for Texas antitrust and consumer-protection claims.

7. Venue is proper in this District because Defendants transact substantial business here, enforce exclusive ticketing agreements affecting Texas venues, and deploy the same deceptive and anticompetitive practices alleged herein against Texas residents.

## III. PARTIES

**Plaintiff**

7. Plaintiff is an individual and rights-holder whose creative, economic, and consumer interests have been materially harmed by Defendants' integrated system of exclusionary and deceptive conduct.

**Defendants**

8. **Live Nation Entertainment, Inc.** is a Delaware corporation headquartered in Beverly Hills, California.

9. **Ticketmaster LLC** is a wholly owned subsidiary of Live Nation, headquartered in Beverly Hills, California.

10. **Allianz Global Risks US Insurance Company** is an Illinois-domiciled insurer providing event-related insurance products through Ticketmaster's platform.

11. **Oak View Group, LLC** is a venue-management and promotion conglomerate operating in coordination with Live Nation and Ticketmaster.

12. **John Does 1–50** are individuals and entities whose identities are presently unknown but who participated in, directed, or profited from the conduct alleged herein.

## IV. FACTUAL OVERVIEW OF THE NATIONAL PATTERN

This Section sets forth a consolidated factual overview demonstrating that Defendants' conduct is part of a recurring national pattern, as reflected in federal filings, state Attorney General records, municipal contracts, and independent industry analyses.

**A. Federal, State, and Municipal Records Establish Recurring Exclusivity and Market Foreclosure**

8.  Live Nation's SEC 10-K filings (Exhibit A, blue drive) concede that the company's business model relies on long-term exclusive ticketing contracts.

9.  Municipal contracts—including Seattle's KeyArena and San Diego stadium agreements (Exhibits B–C)—explicitly designate Ticketmaster as the exclusive ticketing provider for all events.

10. These contracts show a standardized national template, not isolated relationships.

---

**B. DOJ Findings Establish Retaliation, Coercion, and Consent-Decree Violations**

11. In 2019, the DOJ confirmed Live Nation repeatedly retaliated against venues that sought or used competing ticketing services (Exhibit D).

12. In 2024, the DOJ filed a monopolization action describing Live Nation's vertically integrated architecture of coercion, exclusivity, and market foreclosure (Exhibit E).

13. These findings mirror the allegations in this Complaint.

---

**C. Multi-State Attorney General Records Demonstrate Uniform Deception and Refund Suppression**

    14. Exhibits F–Z (000018.csv, 000022.csv, 000031.csv, 000043.csv, B-series PDFs, and Records_Redacted.pdf) show:

- recurring refund denial scripts

- automated template responses

- insurance-fee confusion

- ticket-insurance misrepresentation

- consumer inability to reach Defendants

- identical narratives across years and states

    15. Uniformity equals policy, not error.

**D. Allianz Insurance Practices Confirm Consumer-Facing Manipulation**

16. Allianz settlements involving hidden "assistance fees" overlap directly with Ticketmaster's checkout flow (Exhibit AA).

17. This confirms integrated consumer-cost inflation within Defendants' ecosystem.

---

### E. Artist-Side Exploitation Establishes Monopsony Power

18. Publicly reported Live Nation terms (Exhibit AB) show:

- unilateral guarantee reductions

- shifted financial risk

- dependence of artists on Live Nation's vertically controlled ecosystem

19. Records_Redacted.pdf (Exhibit AC) reveals a parallel pattern of exploitation affecting creators in other sectors—reinforcing that creators have little bargaining power under dominant intermediaries.

---

### F. Competitor Suppression Documented by Independent Reports

20. Venues adopting Etix, AXS, or Spectra reported losing access to Live Nation tours (Exhibit AD).

21. Legislative responses such as California SB 829 identify Ticketmaster's exclusivity structure as statewide anticompetitive harm (Exhibit AE).

## V. CAUSES OF ACTION

Plaintiff realleges and incorporates by reference all preceding paragraphs as though fully set forth herein.

### Count I – Monopolization in Violation of Sherman Act § 2

1. Relevant product markets include, at minimum, primary ticketing services to major concert venues, concert promotion services, and related live-event services in the United States.

2. Defendants possess durable monopoly power in one or more of these relevant markets, as evidenced by high and persistent market shares, substantial barriers to entry, and the ability to impose unfavorable terms on venues, artists, and consumers.

3. Defendants have willfully maintained and enhanced this monopoly power through exclusionary conduct, including:

- long-term exclusive ticketing contracts;

- retaliation against venues that consider or adopt rival ticketing providers;

- conditioning artist routing and tours on venue use of Ticketmaster;

- structurally embedding deceptive, friction-filled refund and insurance practices.

4. This conduct has harmed competition by foreclosing rivals, raising barriers to entry, reducing consumer choice, inflating fees, and suppressing opportunities for independent promoters, venues, and creators.

5. Plaintiff has suffered antitrust injury in the form of higher prices, restricted options, and distorted access to the live-events and creative marketplace.

6. Defendants' conduct constitutes monopolization in violation of Section 2 of the Sherman Act.

**Count II – Anticompetitive Acquisitions in Violation of Clayton Act § 7**

1. Live Nation has acquired promoters, venues, and vertically related entities in ways that may substantially lessen competition or tend to create a monopoly in the relevant markets.

2. These acquisitions, when viewed collectively and in conjunction with exclusive contracts and retaliation, have entrenched Live Nation's and Ticketmaster's dominance and foreclosed rivals from meaningful access to artists and venues.

3. The DOJ's public filings and state AG materials corroborate that these acquisitions are part of a broader strategy to widen Defendants' "moat" and protect their dominant position.

4. Plaintiff has been injured by reduced competition, diminished alternatives, and the resulting exploitative terms in the live-events ecosystem.

5. The acquisitions at issue violate Section 7 of the Clayton Act.

**Count III – Violation of the Texas Free Enterprise and Antitrust Act (Tex. Bus. & Com. Code § 15.05)**

1. Defendants' conduct substantially lessens competition and tends to create or maintain a monopoly in trade and commerce within Texas.

2. Defendants' exclusive dealing, retaliation, and vertical integration practices restrain trade within the meaning of Texas antitrust law.

3. Texas consumers, venues, artists, and creators are directly affected by these practices through higher prices, suppressed opportunities, and limited access to alternative

services.

4. Plaintiff has suffered injury in Texas as a result of these restraints.

5. Defendants' conduct violates Tex. Bus. & Com. Code § 15.05 and related provisions.

## Count IV – Texas Deceptive Trade Practices Act (DTPA)

1. Plaintiff is a consumer within the meaning of the Texas Deceptive Trade Practices Act.

2. Defendants, in trade and commerce, have engaged in false, misleading, and deceptive acts and practices, including but not limited to:

   - misrepresenting the availability or terms of refunds;

   - failing to clearly and conspicuously disclose insurance fees and conditions;

   - using digital interfaces that induce consent to unwanted charges;

   - implying that consumers lack refund rights where such rights exist.

3. These acts were a producing cause of economic damages to Plaintiff.

4. Defendants' conduct was knowing and/or intentional, entitling Plaintiff to enhanced damages as allowed by law.

## Count V – False or Misleading Representations in Violation of Lanham Act § 43(a)

1. In connection with goods and services in interstate commerce, Defendants have used online interfaces, terms, and statements that are false or misleading as to the nature, characteristics, and qualities of ticketing, insurance, and refund rights.

2. These misrepresentations deceive, or are likely to deceive, a substantial segment of consumers.

3. The deception is material and affects purchasing decisions, including the decision to buy tickets, accept insurance, and forgo refunds.

4. Plaintiff has been and is likely to be damaged by such conduct, including through payment of inflated or unwanted charges and distortion of market choices.

## Count VI – Unjust Enrichment

1. Defendants have been unjustly enriched through the collection and retention of fees, premiums, and revenues obtained via anticompetitive, deceptive, and unfair practices.

2. Equity and good conscience do not permit Defendants to retain the benefits derived from this conduct.

3. Plaintiff seeks restitution and disgorgement of the improper gains obtained at Plaintiff's expense.

## Count VII – Declaratory Judgment (28 U.S.C. §§ 2201–2202)

1. An actual controversy exists between Plaintiff and Defendants regarding the legality of Defendants' conduct as alleged in this Complaint.

2. Plaintiff seeks a declaration that Defendants' conduct constitutes monopolization, attempted monopolization, unlawful exclusive dealing, unfair competition, and deceptive practices under federal and state law.

3. Declaratory relief will clarify the parties' rights and obligations and guide future conduct in the live-events marketplace.

## Count VIII – Digital Unfairness and Deceptive Interface Practices (FTC Act § 5 Analog and State Law)

1. Defendants deploy user interfaces and digital workflows that are designed to:

- o steer consumers into unwanted insurance;

- o obscure or delay refunds;

- o increase fee extraction through dark patterns;

- o make it difficult or impossible to exercise rights that exist by policy or law.

2. These practices are unfair and deceptive within the meaning of Section 5 of the FTC Act and analogous state provisions.

3. The practices cause substantial injury to consumers that is not reasonably avoidable and not outweighed by countervailing benefits.

4. Plaintiff has suffered such injury and seeks appropriate relief.

## VI. ANTICIPATED DEFENSES AND PLAINTIFF'S PRE-REBUTTAL

Defendants are expected to deny, minimize, or reframe the conduct described in this Complaint. Based on prior litigation, consent-decree proceedings, venue-level disputes, AG investigations, public statements, and industry-side communications, Plaintiff anticipates the following categories of defenses and provides corresponding rebuttals grounded in law, economics, and publicly documented conduct.

## A. "These are isolated, customer-service-level complaints."

**Anticipated Argument:**

Defendants will attempt to characterize refund denials, insurance toggles, and ticketing obstructions as isolated glitches or pandemic-era anomalies.

**Rebuttal:**

Government-released complaint datasets (WA AG, NY AG, FL PRR, and federal filings) show **identical phrasing, failure modes, denial templates, and escalation sequences** repeated across more than a decade and across multiple states. Repetition of identical operational scripts evidences **standardized policy**, not accident.

Courts infer intent from pattern where conduct occurs "with mathematical regularity."

## B. "This is industry standard; everyone does this."

**Anticipated Argument:**

Defendants will claim exclusivity and integration are common in live-events and digital marketplaces.

**Rebuttal:**

The Supreme Court in *Microsoft* held that industry custom does not excuse exclusionary conduct.

Moreover, municipal contracts, SEC filings, and DOJ findings show Live Nation/Ticketmaster

exert a **degree of vertical integration unmatched by any competitor**, negating any "standard practice" framing. Structural dominance plus exclusivity is the definition—not the defense—of monopolization.

---

### C. "Refunds were eventually provided, so no harm exists."

**Anticipated Argument:**

Defendants will assert that late-stage refunds or insurance adjustments cured any alleged injury.

**Rebuttal:**

FTC Act §5(n) and equivalent state doctrines classify **the practice itself** as the injury.

Fee inflation, forced insurance bundling, denial loops, and consumer obstruction are unlawful even if Defendants later issue refunds under pressure.

Delayed refunds do not erase economic injury, reliance costs, or distorted marketplace choice.

---

### D. "We don't control venues, artists, or routing decisions."

**Anticipated Argument:**

 Defendants will claim decentralized market actors independently choose Live Nation systems.

**Rebuttal:**

The 2019 DOJ enforcement action and multiple municipal contracts document **explicit retaliation**, threats to withhold tours, and conditioning artist access on Ticketmaster adoption.

The updated consent-decree language exists precisely because these denials were disproven in

prior federal investigations.

Routing control, artist guarantees, and venue lock-in are part of a unified vertical structure—not independent choices.

---

### E. "Any exclusivity agreements are lawful vertical contracts."

**Anticipated Argument:**

Defendants will describe exclusivity as ordinary vertical efficiency agreements.

**Rebuttal:**

Exclusivity is unlawful when paired with:

- market power,

- foreclosure of rivals,

- retaliation for deviation,

- and leveraging dominance across markets.

  All four conditions are documented in the DOJ's 2024 monopolization complaint and in municipal records.

  Under *Tampa Electric* and vertical-foreclosure jurisprudence, exclusivity backed by coercion is per se suspect.

### F. "Competitors exist, so no monopoly exists."

**Anticipated Argument:**

Defendants will point to AXS, Etix, Eventbrite, or Spectra as evidence of a competitive market.

**Rebuttal:**

Competitors on paper do not equal competition in fact.

Venue access barriers, retaliation, and long-term exclusive contracts foreclose rivals at the point of entry.

Courts assess **effective competitive access**, not theoretical alternatives.

### G. "Plaintiff lacks antitrust injury or standing."

**Anticipated Argument:**

Defendants will claim Plaintiff's harm is individualized or too remote.

**Rebuttal:**

Plaintiff suffers **consumer-level**, **creator-level**, and **market-distortion** injuries that flow directly from Defendants' exclusionary structure.

The Supreme Court recognizes antitrust injury where a plaintiff suffers inflated costs, reduced choice, blocked access, suppressed revenue flows, or downstream exploitation.

This Complaint alleges all five.

### H. "This is a contract dispute, not an antitrust case."

**Anticipated Argument:**

Defendants will attempt to reframe systemic conduct as individual transaction disputes.

**Rebuttal:**

Pattern evidence from state AG files, consent-decree violations, and national exclusivity contracts establishes system-level architecture, not isolated contract interpretation.

Courts reject attempts to reduce structural exclusion to private-order disputes.

---

### I. "Pandemic disruptions caused the issues."

**Anticipated Argument:**

Defendants will blame COVID-19 for refund chaos and consumer harm.

**Rebuttal:**

Patterned denial scripts appear **before, during,** and **after** COVID-19.

The WA AG datasets from 2016–2024 show continuity unaffected by external shocks.

Pandemic conditions amplified—not created—the underlying design choices.

---

### J. "The government already addressed this; no further action is needed."

**Anticipated Argument:**

Defendants may argue the consent decree or DOJ suit resolves concerns.

**Rebuttal:**

Prior enforcement does not immunize subsequent conduct.

The recurrence of the same behavior after the decree demonstrates **willful continuation**, not remediation.

Courts routinely hold that prior government intervention heightens—not dampens—judicial scrutiny.

---

### K. "We merely provide technology; we don't control transactions."

**Anticipated Argument:**

Defendants will attempt the "platform neutrality" argument used by intermediaries in other sectors.

**Rebuttal:**

Ticketmaster's checkout flow, insurance placement, dark-pattern UI, refund gating, and denial macros reveal **active manipulation**, not passive facilitation.

Algorithmic routing logs and exclusive venue contracts show operational control inconsistent with platform neutrality claims.

---

### L. "Pricing reflects market forces, not dominance."

**Anticipated Argument:**

Defendants will argue dynamic pricing and fees reflect supply and demand.

**Rebuttal:**

Dynamic pricing becomes unlawful when implemented in a market **foreclosed by exclusive dealing**, where consumers cannot access alternatives.

Monopoly markets lack competitive price discipline.

The DOJ complaint and municipal-contract evidence confirm this foreclosure.

---

**M. "Artists and consumers choose our system voluntarily."**

**Anticipated Argument:**

Defendants will argue participation is optional.

**Rebuttal:**

Voluntariness collapses when a dominant firm controls routing, venue access, ticketing infrastructure, and promotional pathways.

Locked ecosystems invalidate consent when alternatives are illusory or foreclosed.

---

**N. "The insurer—not Ticketmaster—is responsible for insurance issues."**

**Anticipated Argument:**

They will attempt to shift blame to Allianz.

**Rebuttal:**

Integrated checkout design, mandatory placement, fee-disclosure failures, and bundled

workflows establish shared liability under agency principles and joint-enterprise doctrines. Allianz's settlement confirms systemic issues traced back to integrated sales channels.

---

## VII. REQUEST FOR JUDICIAL NOTICE

1. Pursuant to Federal Rule of Evidence 201, Plaintiff respectfully requests that the Court take judicial notice of the public records and materials provided on Exhibit Drive A: Public-Record Evidence.

2. These materials include, without limitation:

   o filings and complaints by the United States Department of Justice;

   o state Attorney General consumer-complaint records and internal memoranda;

   o municipal venue contracts;

   o SEC filings and other corporate disclosures;

   o public settlements and regulatory actions involving Defendants or their affiliates;

   o publicly available legislative materials and policy reports.

3.  Each of these documents is a matter of public record whose accuracy cannot reasonably be questioned and is capable of ready determination by resort to sources whose accuracy cannot reasonably be disputed.

4.  The Court may therefore take judicial notice of these materials for the purpose of establishing the existence, timing, and content of governmental findings, contractual terms, public admissions, and recorded consumer complaints.

5.  Judicial notice is particularly appropriate here because the central issue is not the authenticity of these records, but the legal significance of a pattern of conduct already reflected in government and public sources.

## VIII. PRAYER FOR RELIEF

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in Plaintiff's favor and grant the following relief:

### A. Structural Remedies

1.  **Divestiture.**

    An order requiring Live Nation Entertainment, Inc. to divest Ticketmaster LLC or any other assets necessary to eliminate the anticompetitive effects of the conduct alleged herein and to restore competitive market structure.

2. **Prohibition on Exclusive Dealing.**

A permanent injunction barring Defendants from entering, renewing, enforcing, or threatening any exclusive ticketing, routing, promotion, or venue agreements.

3. **Dissolution of Anticompetitive Joint Ventures.**

An order dissolving or restructuring arrangements with Oak View Group and similar entities whose operations effectively extend or enforce Live Nation's market power.

### B. Conduct Remedies

4. **Algorithmic Transparency and Audit.**

A court-supervised audit and disclosure of Ticketmaster's algorithms, selection logic, refund-denial workflows, and insurance-placement mechanisms, with ongoing monitoring.

5. **Compulsory Access and Non-Discrimination.**

A requirement that Defendants provide nondiscriminatory access to ticketing infrastructure for independent promoters, competing ticketers, and venues.

6. **Prohibition on Retaliatory Routing.**

An injunction forbidding Defendants from conditioning artist tours, venue routing, or promotional support on the use of Ticketmaster services.

## C. Monetary Relief

7. **Disgorgement.**

   Recovery of all profits obtained through anticompetitive, deceptive, or unlawful conduct, including ticket fees, insurance revenues, or other improper gains.

8. **Restitution and Damages.**

   Restitution for economic harm suffered by Plaintiff and—where applicable—statutory, treble, or exemplary damages under federal and state law.

9. **Constructive Trust.**

   Imposition of a constructive trust over improperly retained funds, including fees collected through misrepresentation, denial loops, or deceptive interface design.

## D. Equitable and Declaratory Relief

10. **Declaratory Judgment.**

    A declaration that Defendants' conduct constitutes monopolization, attempted monopolization, unfair competition, deceptive practices, and unlawful restraint of trade.

11. **Judicial Notice of Public Records.**

    An order taking judicial notice of the government records provided in the accompanying exhibit drive.

12. **Record-Preservation Orders.**

Immediate preservation of all digital logs, routing data, seat-allocation scripts, insurance workflows, and other electronically stored information.

**E. Ancillary Relief**

13. **Appointment of a Monitor.**

Appointment of an independent compliance monitor to oversee Defendants' adherence to structural and behavioral remedies.

14. **Fee-Shifting and Costs.**

Award of Plaintiff's reasonable attorney's fees, litigation expenses, and costs as permitted by law.

15. **Additional Relief.**

Any additional relief the Court deems just and proper to restore competition, protect consumers and creators, and prevent recurrence.

---

## IX. VERIFICATION

I, Joseph A. Reyna, hereby declare under penalty of perjury that:

1. I am the Plaintiff in this action.

2. I have reviewed the allegations set forth in this Verified Master Complaint.

3. To the best of my knowledge, information, and belief, formed after reasonable inquiry, the factual allegations are true and correct, and the public-record materials referenced herein are genuine copies of government-issued documents or other publicly available sources.

4. All exhibits provided to the Court on the accompanying physical media drive labeled *Exhibit Drive A: Public-Record Evidence* are true and correct copies of the materials they purport to be.

Executed on this 16th day of November, 2025.

_____

Joseph Reyna, Pro Se Plaintiff

Austin, TX

_____

## X. MASTER EXHIBIT INDEX – EXHIBIT DRIVE A: PUBLIC-RECORD EVIDENCE

The following exhibits are provided on the accompanying blue physical media drive labeled *Exhibit Drive A: Public-Record Evidence*. Each is incorporated by reference into this Complaint.

- **Exhibit A** – United States v. Live Nation Entertainment, Inc., et al., DOJ Antitrust Complaint, S.D.N.Y. (B1_PC_25-179.pdf).

- **Exhibit B** – Washington Attorney General internal memoranda and authority requests regarding Live Nation/Ticketmaster investigations (B5-PC_25-179 (1).pdf).

- **Exhibit C** – Washington Attorney General annual report excerpts and statistical summaries reflecting enforcement priorities and recovery amounts (B3-PC_25-179.pdf).

- **Exhibit D** – New York Attorney General data breach notification regarding Ticketmaster LLC (NY AG G000303-050425.pdf).

- **Exhibit E** – Universal Music Group submission to the U.S. Copyright Office regarding DMCA safe harbors and platform practices (FOIA 47-2025 UMG: Copyright Office.pdf).

- **Exhibit F** – Washington AG consumer complaint files referencing Ticketmaster and Live Nation (B2-PC_25-179.pdf; B4-PC-25-179.pdf; B6-PC_25-179.pdf; B7–B10 PC_25-179.pdf; Exhibit_R_WA_AG_Complaints_PRR-2025-0179.pdf).

- **Exhibit G** – Washington AG complaint datasets (000018.csv; 000022.csv; 000031.csv; 000043.csv) reflecting multi-year, multi-issue patterns of consumer harm.

- **Exhibit H** – Records_Redacted.pdf: multi-state Attorney General internet complaints documenting creator exploitation, music-industry fraud, and financial-abuse schemes targeting artists and rights-holders.

- **Exhibit I** – Publicly available municipal contracts designating Ticketmaster as exclusive ticketing provider for major venues (e.g., KeyArena/Seattle; San Diego stadium materials).

- **Exhibit J** – Live Nation Entertainment, Inc. SEC Form 10-K excerpts describing reliance on exclusive ticketing contracts and vertical integration.

- **Exhibit K** – Public settlements, regulatory actions, and/or consent orders involving Allianz or related ticket-insurance practices.

- **Exhibit L** – Public reports, legislative materials (including California SB 829), and policy analyses addressing Live Nation/Ticketmaster's market power and exclusivity structure.

Plaintiff reserves the right to supplement this Index as additional public-record materials are identified or obtained.

## DECLARATION OF JOSEPH ANTHONY REYNA

REGARDING CONTACT INFORMATION, COURTESY EMAILS, AND SERVICE
ARRANGEMENTS

I, **Joseph Anthony Reyna**, declare under penalty of perjury as follows:

1. I am the Plaintiff in this action. I make this declaration based on my personal knowledge
   and the research I conducted regarding the mailing and email contact information for
   Defendants Live Nation Entertainment, Inc.; Ticketmaster LLC; Allianz Global Risks US
   Insurance Company; Oak View Group, LLC; and John Does 1–50.

2. Based on publicly available corporate records, business disclosures, and official contact
   pages, the following mailing addresses are associated with the named Defendants:

   - **Live Nation Entertainment, Inc.**
     9348 Civic Center Drive
     Beverly Hills, CA 90210

   - **Ticketmaster LLC**
     9348 Civic Center Drive
     Beverly Hills, CA 90210

   - **Oak View Group, LLC**
     5050 S. Syracuse St., Suite 800

30

Denver, CO 80237

- o **Allianz Global Risks US Insurance Company**

  1465 North McDowell Blvd., Suite 100

  Petaluma, CA 94954

  (General corporate and consumer-facing address; legal-service address may differ.)

3. Based on the same publicly available sources, I identified the following email addresses suitable for **courtesy communications only**:

- o **Live Nation / Ticketmaster**

  privacy@livenation.com

  LNUrban@livenation.com

- o **Oak View Group**

  info@oakviewgroup.com

- o **Allianz (consumer-facing contact)**

  customerservice@allianzassistance.com

4. These email addresses are *not* intended to serve as substitutes for formal service of process. They are identified solely for courtesy copies and post-service communication.

5. I respectfully request that the Court authorize service of process by the **United States Marshals Service**, as permitted for litigants proceeding in forma pauperis, and I state under oath that if my in forma pauperis status changes or is revoked, I will pay any required service fees in full.

6. After initial formal service is completed, I intend to send future copies of filings and courtesy materials through **nonprofit marketing mail**, consistent with the operational structure of my 501(c)(3) organization. This declaration is made to ensure transparency with the Court regarding future mailing practices. This method will not be used for initial service of process.

7. I declare under penalty of perjury that the foregoing is true and correct.

Executed on **November 16, 2025** in Austin, Texas.

**Joseph Anthony Reyna**

Plaintiff, Pro Se

32

## CERTIFICATE OF SERVICE AND REQUEST FOR U.S. MARSHAL SERVICE

I certify that on **November 16, 2025**, I filed the accompanying **Verified Master Complaint**, the **Exhibit Drive A: Public-Record Evidence**, and supporting documents with the Clerk of the Court for the United States District Court for the Eastern District of Texas, Marshall Division.

I further certify the following:

1. Plaintiff requests that the **United States Marshals Service** be directed to serve all Defendants with the summons and complaint pursuant to 28 U.S.C. § 1915(d) and Fed. R. Civ. P. 4(c)(3), and Plaintiff agrees to pay all required service fees should his in forma pauperis status later change.

2. Upon authorization by the Court and issuance of summonses, Plaintiff requests Marshal service upon the following Defendants at the addresses listed below:

   - **Live Nation Entertainment, Inc.**
     9348 Civic Center Drive
     Beverly Hills, CA 90210

   - **Ticketmaster LLC**
     9348 Civic Center Drive
     Beverly Hills, CA 90210

   - **Oak View Group, LLC**
     5050 S. Syracuse St., Suite 800
     Denver, CO 80237

- o **Allianz Global Risks US Insurance Company**

  1465 North McDowell Blvd., Suite 100

  Petaluma, CA 94954

3. In addition to Marshal service, Plaintiff will provide **courtesy email copies** of major

   filings (where available) to the following addresses after summons issuance:

   - o privacy@livenation.com

   - o LNUrban@livenation.com

   - o info@oakviewgroup.com

   - o customerservice@allianzassistance.com

4. Courtesy transmission does not constitute service of process and is not offered as a

   substitute for Marshal service.

Executed on **November 16, 2025** in Austin, Texas.

**Joseph Anthony Reyna**

Plaintiff, Pro Se

34