# Billboard Chart Methodologies and Independent Artists: A Legal Analysis

*The Decline of Indie Artist Revenue:*
*How Streaming and Emerging Market Exploitation Reshaped the Global Music Industry*



## ABSTRACT

This report exposes how Billboard, Luminate, RIAA, major DSPs, and affiliated media partners operate a vertically integrated feedback loop that simulates musical popularity, conceals manipulation, and systematically disqualifies independent creators from access to capital, legitimacy, and cultural authority. What presents itself as a neutral metric—the "charts"—is in fact a manufactured outcome of algorithmic bias, editorial payola, data opacity, and coordinated rule engineering.

**EXECUTIVE SUMMARY**

Billboard, Luminate, the RIAA, major labels, and top DSPs (Spotify, Apple Music, YouTube) comprise a vertically-integrated illusion engine. They manufacture chart dominance for priority artists (chiefly Drake) through algorithmic design, data laundering, and cross-owned media amplification—then weaponize those engineered metrics to prey on independent creators, inflate catalog valuations, and mislead investors, brands, and the public. This report reverse-engineers the psychology, economics, and legal violations of that enterprise, showing how every node—from stream weighting, to certification, to press coverage—operates as a coordinated market-rigging system. Plaintiff stands at four vectors (trademark, nonprofit, media, whistle-blower), granting unique standing to attack the cartel under antitrust, deceptive-trade, intellectual-property, securities, and charitable-fraud statutes.

---

**SECTION 1 — MULTI-VECTOR STANDING MATRIX**

| Capacity | Statutory Hook | Documented Injury |
|---|---|---|
| Trademark Owner (JOECAT® 6,057,783) | Lanham Act §§ 32, 43(a), 43(c) | Commercial dilution due to manipulated success signals |
| 501(c)(3) Operator (Dreams Over Dollars™) | TX DTPA § 17.50(a)(3); IRS Rev-Rul 70-186 | Diverted royalties harm charitable beneficiaries |
| Media Outlet (More Than Rich™, TM pending) | TX Const. Art I § 8; 42 U.S.C. § 1983 (if state actors apply) | Throttled reach, reputational injury, ad suppression |
| Whistle-blower (multi-agency filings) | 18 U.S.C. § 1513(b) | Playlist removal, suppression after protected disclosures |

---

## SECTION 2 — DATA-LAUNDERING SUPPLY CHAIN

**Step-by-step flow of the manipulated success metric:**

1. **Label Funding**
   ↓

2. **DSP Playlist Override (Spotify, Apple, YouTube)**
   ↓

3. **Luminate Weighted Feed (Stream Inflation + Opaque Weighting)**
   ↓

4. **Billboard Chart Publication (Coordinated with Label Releases)**
   ↓

5. **Penske Media Syndication**
   *(Billboard, Variety, Rolling Stone cross-promote outcomes)*
   ↓

6. **RIAA Certification Based on Stream Equivalents**
   ↓

7. **Catalog Valuation Inflated (Hipgnosis, Blackstone, etc.)**
   ↓

8. **Sync Licensing & Brand Sponsorship Pricing Justified**
   ↓

9. **Investor Confidence & Market Hype (used in SEC filings, IP sales)**
   ↓

10. **Revenue Recapture by Major Labels and Their Stakeholders**

---

**Key Infrastructure Node: LUMINATE (formerly MRC/Nielsen)**
Luminate is the sole third-party data provider used by Billboard and RIAA. It is owned by Penske Media Group (which also owns the media arms that promote these charts). There is no

3

independent public audit of stream weighting, data inflow, or algorithmic overrides—making Luminate the **central clearinghouse of unverified commercial legitimacy**.

**LUMINATE** (formerly MRC/Nielsen) is the sole data custodian for both Billboard and RIAA, owned by Penske Media Group. Their lack of audit transparency enables data laundering of pre-engineered commercial outcomes.

## SECTION 3 — CONCEALMENT GRID

| Cognitive Lever | System Implementation | Legal Violation |
| --- | --- | --- |
| Framing | Billboard presented as neutral | FTC § 5; Lanham § 43(a) |
| Authority Bias | Penske-owned press recirculates chart results | FTC native-ad rule; 15 U.S.C. § 45a |
| Information Friction | Luminate blocks access, disables exports | Restmt. Unfair Comp. § 1; UETA § 8(b) |
| Normalized Deviance | Discovery Mode silently made permanent | 18 U.S.C. § 666; Civil conspiracy § 876 |
| Retaliatory Chill | Indie dissenters lose visibility | 18 U.S.C. § 1513(b); RICO predicate act |

## SECTION 4 — RULE-CHANGE × INTENT TIMELINE

4

| Date | Rule | Impact | Beneficiary | Proof |
|---|---|---|---|---|
| Jul 1, 2018 | Paid-tier streams weighted 3x | Drake charts 7 Top-10s | UMG/OVO | PMC deck "premium uplift" (EV-019) |
| Jan 29, 2023 | Recurrent < #25 after 20 weeks | Indie hit purged early | Major labels | Slack msg: "Nuke TikTok riff-raff" |
| Apr 15, 2024 | Playlist #1-3 gets 100% weight | 320% stream jump for Drake | Label priorities | Slide deck: "Tier-A synergy" (EV-021) |

## SECTION 5 — DAMAGES ("JUNO") — SEE APPENDIX A

Total: $120,000 for one artist. Sector-wide damages extrapolated: **$42.6 million**.

## SECTION 6 — RED-FLAG TABLE

| Red Flag | Cover | Real Use | Statute |
|---|---|---|---|
| Playlist Slot Bias | "Reflects fan behavior" | Locks label placements | Sherman § 2 |
| Discovery Mode | "Optional" | Pay-for-play mechanism | FTC § 5; 15 U.S.C. § 45a |

| | | | |
|---|---|---|---|
| Recurrent Rule | "Keep charts fresh" | Excises indie slow-growth | TX DTPA § 17.46(b)(24) |
| RIAA Equivalents | "Sales proxy" | Auto-play farm inflation | Lanham § 43(a) |
| Luminate Secrecy | "Trade secret" | Prevents audit | UETA § 8(b); Restmt. § 51 |

## SECTION 7 — STATUTES ACTIVATED

- 17 U.S.C. § 1202(b) (DMCA CMI tampering)
- UETA § 8(b) (record tampering)
- IRS Rev. Rul. 70-186; Form 13909 (charitable fraud)
- SEC Rule 10b-5 (securities fraud via catalog valuation)
- TX Penal Code §§ 32.53 & 33.02 (ID fraud; unauthorized access)
- Restmt. Restitution § 51 (constructive trust)
- TX Const. Art. I §§ 8, 19 (free speech & due course violations)

## SECTION 8 — RELIEF REQUESTED

- Immediate injunction against algorithmic favoritism
- Constructive trust over revenues tied to manipulated charts
- Treble damages under civil RICO
- Mandatory third-party audit of all weighting schemas
- Public retraction from Billboard for compromised rankings

## SECTION 9 — CLOSING FRAME

"Luminate supplies the numbers, Billboard prints the headlines, RIAA hands out the plaques, DSPs rig the playlists—and every link is owned, licensed, or lobbied by the same three labels.

This is not organic culture. It is a vertically-integrated mirage, sold to fans, investors, and unsuspecting creators as truth. The law does not protect such deception—especially when it siphons resources from public-interest art and community reinvestment."

Plaintiff respectfully demands injunctive relief, restitution, declaratory judgment, and forensic discovery under federal and state law.

*Filed on behalf of Plaintiff Joseph A. Reyna (JoeCat®), June 29, 2025.*

---

**Appendices (To Be Filed Concurrently):**

- Appendix A: Royalty-Loss Spreadsheet (JUNO)
- Appendix B: FOIA & IRS Filing Log
- Appendix C: Ownership & Influence Diagram
- Appendix D: Trademark & 501(c)(3) Certificates

## NOTE TO COURT / REGULATORS: WHY THEIR EXCUSES WON'T HOLD

Plaintiff anticipates that Defendants will invoke a variety of strategic defenses rooted in industry custom, constitutional shielding, and blame diffusion. Each collapses under legal scrutiny.

---

### 1. "This is just industry standard."

**Why they say it:** To normalize manipulation as business-as-usual.
**Why it fails:** Legality is not defined by frequency. Practices that result in fraud, false commercial attribution, or structural exclusion are not protected simply because they are common.

**Legal Authority:**
 • FTC v. POM Wonderful LLC, 573 U.S. 102 (2014)
 • Restatement (Third) of Unfair Competition § 3

---

### 2. "There's no intent to deceive."

**Why they say it:** To frame harm as accidental or technical.
**Why it fails:** Intent is inferred through consistent benefit to a narrow group, lack of disclosure, and deliberate opacity. Civil conspiracy does not require direct confession—only predictable alignment.

**Legal Authority:**
 • Restatement (Second) of Torts § 876(b)
 • Basic Inc. v. Levinson, 485 U.S. 224 (1988)

---

### 3. "No one person controls this—there's no central actor."

**Why they say it:** To avoid conspiracy liability.
**Why it fails:** Courts recognize parallel conduct and shared incentive as grounds for coordination. Coordination by structure is still conspiracy under law.

**Legal Authority:**
 • Bell Atlantic Corp. v. Twombly, 550 U.S. 544 (2007)
 • Restatement (Third) of Restitution § 51

### 4. "This isn't fraud—it's just marketing."

**Why they say it:** To reframe deception as promotion.
**Why it fails:** When manipulated data is used to influence markets, contracts, or valuation, it becomes fraud. Marketing cannot justify falsified metrics or simulated popularity.

**Legal Authority:**
- Lanham Act § 43(a)
- 15 U.S.C. § 45a
- In re Juul Labs, 497 F. Supp. 3d 552 (N.D. Cal. 2020)

### 5. "The Plaintiff isn't directly harmed."

**Why they say it:** To challenge standing.
**Why it fails:** Plaintiff holds legal standing as a trademark holder, nonprofit operator, media publisher, and whistleblower. Economic injury is measurable, traceable, and repeatable.

**Legal Authority:**
- Spokeo v. Robins, 578 U.S. 330 (2016)
- Lujan v. Defenders of Wildlife, 504 U.S. 555 (1992)

### 6. "Our data is proprietary."

**Why they say it:** To evade audit or discovery.
**Why it fails:** Proprietary status does not shield data used to set market value, royalty rates, or public perception. Courts have compelled transparency where hidden data governs commercial outcomes.

**Legal Authority:**
- UETA § 8(b)
- FTC Act § 5
- Restatement (Third) of Unfair Competition § 39

### 7. "We didn't suppress this Plaintiff—we don't know him."

**Why they say it:** To deny targeting or retaliation.
**Why it fails:** Systemic exclusion with foreseeable harm constitutes constructive discrimination. Personal knowledge is irrelevant when platform design guarantees suppression.

**Legal Authority:**
  • Teamsters v. U.S., 431 U.S. 324 (1977)
  • TX DTPA § 17.50(a)(3)

---

### 8. "Charts are protected by the First Amendment."

**Why they say it:** To shield chart manipulation as editorial speech.
**Why it fails:** Commercial speech used to justify pricing, certifications, and investor value loses First Amendment protection once it becomes materially misleading.

**Legal Authority:**
  • Central Hudson Gas & Electric Corp. v. Public Service Commission, 447 U.S. 557 (1980)
  • Nike v. Kasky, 539 U.S. 654 (2003)

---

### 9. "It's the artist's team—not us."

**Why they say it:** To shift blame to third-party marketers or labels.
**Why it fails:** Vicarious liability applies to platforms and publishers that knowingly benefit from manipulated data. When they profit from deception, silence becomes complicity.

**Legal Authority:**
  • Restatement (Third) of Agency § 8.11
  • DMCA § 1202(b)

---

### Conclusion:

What Defendants call "standard practice" is in fact a **coordinated system of commercial deception**—backed by data concealment, algorithmic favoritism, and media amplification. Each excuse above not only fails—it exposes deeper systemic wrongdoing. Courts and regulators must treat this as **civil fraud**, **constructive suppression**, and **false commercial signaling** at scale.