## IN THE DISTRICT COURT OF LANCASTER COUNTY, NEBRASKA

|  |  |
|---|---|
| STATE OF NEBRASKA, ex rel. Jon Bruning, Attorney General, | ) ) ) ) |
| Relator, | ) ) |
| v. | ) ) |
| SIRIUS XM RADIO INC., | ) ) |
| Respondent. | ) ) ) |

CI 14- **4187**

**APPLICATION FOR
APPROVAL OF ASSURANCE
OF VOLUNTARY
COMPLIANCE**

**COMES NOW** the State of Nebraska, by and through its Attorney General, Jon Bruning, and Assistant Attorney General Abigail M. Stempson, pursuant to the Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1601 et seq. (hereinafter Consumer Protection Act) and the Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301 et seq. (hereinafter Uniform Deceptive Trade Practices Act), and submits this Application for Approval of Assurance of Voluntary Compliance (hereinafter Application).

### PARTIES

1.    Relator Jon Bruning is the duly elected, qualified and acting Attorney General of the State of Nebraska, and brings this Application in his official capacity, by and through Assistant Attorney General Abigail M. Stempson, pursuant to the Consumer Protection Act and the Uniform Deceptive Trade Practices Act.



LANCASTER COUNTY
2014 DEC 4 AM 11
CLERK OF THE
DISTRICT COURT





001465946D02



2.    Respondent Sirius XM Radio Inc. is a Delaware corporation that is headquartered at 1221 Avenue of the Americas, New York, NY 10020. Respondent also means and includes Sirius XM Radio Inc.'s predecessor companies, successor companies, majority owned subsidiaries, divisions, employees, officers, directors, managers, assigns, and agents, including but not limited to Customer Service Representatives.

## VENUE, JURISDICTION, AND CHOICE OF LAW

3.    Relator and Respondent hereby agree that venue regarding this Application and the underlying Assurance of Voluntary Compliance attached hereto and incorporated herein (hereinafter Assurance) is before the District Court of Lancaster County, Nebraska (hereinafter Court) pursuant to the Consumer Protection Act, Neb. Rev. Stat. § 59-1610, and the Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-303.05; that the Court has subject matter jurisdiction over this matter; that the Parties herein submit to the personal jurisdiction of the Court; that the Court retains jurisdiction regarding the interpretation and enforcement of this Application and Assurance; and that the laws of the State of Nebraska control and apply to the interpretation and enforcement of this Application and Assurance.

## GENERAL INFORMATION

4.    Relator, in his capacity as the Attorney General, is directed to take affirmative action in the enforcement of state consumer protection laws, pursuant to the Consumer Protection Act and the Uniform Deceptive Trade Practices Act.

5.    Neb. Rev. Stat. §§ 59-1610 and 87-303.05 grant Relator the authority to enter into an agreement, known as an Assurance of Compliance, Assurance of Voluntary Compliance, Assurance of Discontinuance or an Assurance of Voluntary Discontinuance, with the Respondent.

2

Pursuant to §§ 59-1610 and 87-303.05, such an agreement is subject to filing and receiving the approval of the Court.

6.    An Assurance of Voluntary Compliance (hereinafter Assurance) signed by both parties as of _December 1_____, 2014, attached hereto and incorporated by this reference, was entered into by and between Relator and Respondent.

7.    Pursuant to the Assurance, Relator's portion of settlement funds is $55,540.48 which will be placed in the State Settlement Cash Fund. As provided in the Assurance, the parties acknowledge that the payment described herein is not a fine, civil penalty, or forfeiture.

**WHEREFORE,** the Relator prays this Court review and enter an Order approving the terms and provisions of the Assurance, attached hereto and incorporated herein.

DATED this _4th_ day of _December_____, 2014.

STATE OF NEBRASKA, ex rel.
JON BRUNING, Attorney General

BY: Jon Bruning, No. 20351
    Attorney General

BY: _Abigail M. Stempson_
    Abigail M. Stempson, No. 23329
    Assistant Attorney General
    2115 State Capitol
    Lincoln, NE 68509-8920
    Phone: (402) 471-2683
    Fax: (402) 471-4725
    abigail.stempson@nebraska.gov

*Counsel for the State of Nebraska*

3

**IN THE DISTRICT COURT OF LANCASTER COUNTY, NEBRASKA**

| | | |
|---|---|---|
| In the Matter of: | ) | CASE NO: CI 14- 4187 |
| | ) | |
| **SIRIUS XM RADIO INC.** | ) | |
| | ) | **ASSURANCE** |
| | ) | **OF** |
| Respondent. | ) | **VOLUNTARY COMPLIANCE** |
| | ) | |

---

This Assurance of Voluntary Compliance (hereinafter "Assurance") is entered into between the State of Nebraska by and through Jon Bruning, the Attorney General and the undersigned Assistant Attorney General (hereinafter "State" or "Attorney General"), and Sirius XM Radio Inc., the State alleging that Sirius XM Radio Inc. has violated the Consumer Protection Act, Neb. Rev. Stat. § 59-1601 et seq. (hereinafter "Consumer Protection Act"), and the Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301 et seq. (hereinafter "Uniform Deceptive Trade Practices Act"). The State and Sirius XM Radio Inc. have agreed to execute this Assurance for the purposes of settlement only.

## I.    BACKGROUND

The Nebraska Attorney General, acting on behalf of the State of Nebraska, has the authority to enforce the Consumer Protection Act and the Uniform Deceptive Trade Practices Act.

Sirius XM Radio Inc. is a Delaware corporation that is headquartered at 1221 Avenue of the Americas, New York, NY 10020. As used in this Assurance, "Sirius XM" shall have the meaning ascribed to it in the Definitions Section (Article II of this Assurance).

LANCASTER COUNTY
2014 DEC 11 AM 11
CLERK OF THE
DISTRICT COURT



001465949D02

Including the Nebraska Attorney General, the Attorneys General[1] of the states identified in Exhibit A and the District of Columbia (collectively the "Participating States"), conducted an investigation, pursuant to the Participating States' respective state or local Consumer Statutes, rules, and regulations as set forth on Exhibit A – 1, into the acts and practices of SIRIUS XM relating to its Services, as defined below.

The Assurance is entered into without adjudication on the merits of the assertions in the Assurance.

## A.   STATE'S POSITION

Based upon the Participating States' investigation and review of Consumer complaints initiated in July of 2010, the Attorney General alleges that SIRIUS XM has engaged in the following misleading, unfair, and deceptive acts or practices in violation of the applicable Consumer Statutes (collectively the "State's Allegations"), set forth on Exhibit A – 1:

1.   Automatically renewed Consumers' Services without their consent or their knowledge of SIRIUS XM's automatic renewal policy;

2.   Automatically charged Consumers' debit or credit cards, deducted funds from their bank accounts, or billed Consumers for the automatic renewal of Consumers' Services without the Consumers' consent or their knowledge of SIRIUS XM's automatic renewal policy;

3.   Failed to honor cancellations or made it difficult for Consumers to cancel their Services;

4.   Failed to provide timely refunds or refused to refund payments made by Consumers for automatic renewals done without their consent or their knowledge of the automatic renewal policy; and

---

[1] The State of Georgia is represented in this matter by the Georgia Governor's Office of Consumer Protection, an agency that is not part of the Georgia Attorney General's Office but is authorized to enforce Georgia's Fair Business Practices Act ("FBPA"). For simplicity, the term "Attorneys General" shall include the Administrator of the FBPA.

5. Misrepresented that Consumers' Services would be cancelled, would not be renewed, or would be refunded.

The Participating States do not agree with the statements or positions set forth in SIRIUS XM's Position (Article I, Section B of this Assurance).

## B.    SIRIUS XM'S POSITION

SIRIUS XM believes it has cooperated with the Participating States' investigation and denies each of the allegations asserted herein. SIRIUS XM believes that it has disclosed to Consumers the material terms and conditions of its subscription plans, including the fact that subscription plans automatically renew at the then current rates and that it properly obtains Consumers' consent to the automatic renewal of their subscription plans at the time of purchase. Moreover, SIRIUS XM contends that it strives to provide and ensure the highest level of service to its subscribers, which includes promptly responding to any issues they may have regarding the automatic renewal of their subscription plans, incorrect billing or charges, cancellations or refunds. SIRIUS XM does not admit that it has violated the Consumer Statutes and enters into this settlement for purposes of resolution of the matter only.

## II.    DEFINITIONS

1.  "Advertisement" means any written, oral or electronic statement, illustration or depiction that is designed to induce the purchase of goods or Services, whether the statement appears in or on a brochure, newspaper, magazine, free standing insert, circular, mailer, package insert, package label, product instructions, electronic mail, website, homepage, television, cable television, program length commercial or infomercial, or any other medium. This definition applies to other forms of the word "Advertisement," including, but not limited to, "Advertise" and "Advertising."

3

2. "Clear and Conspicuous" and "Clearly and Conspicuously" mean that the required disclosure is in a size, color, contrast, location, duration, and audibility that makes it readily noticeable, readable, and understandable. A Clear and Conspicuous disclosure may not be contradicted by or be inconsistent with any other information with which it is presented. If any statement modifies, explains, or clarifies other information with which it is presented, it must be presented close to the information it modifies, in a manner that is readily noticeable, readable, and understandable, and it must not be obscured in any manner. Further, the following applies:

   A. For print Advertisements, the disclosures shall be in a type size and location sufficiently noticeable for a Consumer to read and comprehend it, and in print that contrasts with the background against which it appears;

   B. For disclosures disseminated orally, the disclosures shall be delivered in a volume and cadence sufficient for the Consumer to comprehend; and

   C. For disclosures made through an electronic medium (such as television, video, radio, and interactive media, such as the Internet, online services, and software) in which both audio and visual means of communication are utilized for any portion of the message, the disclosure shall be presented in either the audio or visual portions of the communication, as is appropriate under the circumstances. Any audio disclosure shall be delivered in a volume and cadence sufficient for a Consumer to comprehend. Any visual disclosure shall be of a size and shade and appear on the screen for a duration that is sufficient for a Consumer to read and comprehend.

3. "Complaint Resolution Program" shall mean the resolution program agreed upon by SIRIUS XM and the Participating States, set forth in Article VI of this Assurance.

4. "Consumer" means the same as defined in the State's Consumer Statute identified on Exhibit A – 1 of this Assurance. However, in the event that the State's Consumer Statute identified herein

4

does not define the term "Consumer", then it shall have the same meaning as the term "Person" as defined in the State's Consumer Statute, or other identifying individual, as defined by the State's Consumer Statute.

5. "Consumer Statutes" mean the statutes, rules, and regulations cited on Exhibit A – 1of this Assurance.

6. "Consumer Complaint" means a written letter or electronic communication that: (a) SIRIUS XM receives directly from a Consumer at the location on the SIRIUS XM website that SIRIUS XM will create and designate for unresolved complaints; or SIRIUS XM's senior executives receive directly from a Consumer; or SIRIUS XM receives from a local, state or federal consumer protection agency or entity; or SIRIUS XM or the State receives from an accredited Better Business Bureau (including an oral complaint that has been transcribed by a local, state or federal consumer protection agency or entity and forwarded to SIRIUS XM), or an unresolved telephonic complaint received by a SIRIUS XM officer holding the title of executive vice president or above that is reduced to writing in the ordinary course of business; and (b) describes a specified problem or dissatisfaction that can be identified by SIRIUS XM about a matter that is the subject of this Assurance; and (c) requests SIRIUS XM take action or otherwise provide a remedy. A Consumer Complaint shall not include any inquiry, feedback, or general concern or grievance on general matters. In addition, Consumer Complaints shall not include anything submitted directly or indirectly to SIRIUS XM to any general email address, via chat, comment, or statement posted on social media platforms, including platforms supported by SIRIUS XM.

7. "Customer Service Representative" means any person employed or engaged by SIRIUS XM as part of its Customer Care Operations, or similarly named department(s), who has the primary responsibility to interact with Consumers, to make specific representations to Consumers, to engage Consumers in sales, promotions, or offers, to communicate information about pricing

5

and Services, to enter Consumers into transactions (including contracts), or to address complaints or inquiries by Consumers.

8. "Direct Proximity" means that a term is disclosed immediately beneath, beside, or adjacent to an offer or term.

9. "Effective Date" means one hundred and forty (140) days after the Execution Date.

10. "Eligible Complaint" shall mean a Consumer Complaint: (a) from a Consumer residing in the State or who resided in the State at the time of their SIRIUS XM subscription concerning conduct from July 28, 2008 to the Execution Date, or received by SIRIUS XM or the State from a Consumer between July 28, 2008 and one hundred and fifty (150) days after the Execution Date; (b) involving issues addressed by this Assurance; (c) alleging an Identifiable Loss; and (d) that has not been previously resolved. Eligible Complaints shall not include Better Business Bureau Complaints unless the complaint was filed in writing (or transcribed into writing by the Better Business Bureau) with the Better Business Bureau by a Consumer from the State, or from those who resided in the State at the time of their SIRIUS XM subscription, between July 28, 2008 and the Execution Date and between the Execution Date and one hundred and fifty (150) days after the Execution Date ("Better Business Bureau Complaint").

11. "Execution Date" means the date on which the District Court of Lancaster County signs the Order Approving this Assurance of Voluntary Compliance.

12. "Executive Committee" shall mean authorized representatives of the Attorneys General of the States of Arizona, Connecticut, Ohio, Tennessee, Vermont and Washington D.C., who led the Participating States in the multistate investigation into SIRIUS XM.

13. "Free Trial/Promotional Subscription Plan" means a SIRIUS XM subscription plan for personal use, other than a Self-pay Subscription Plan, which allows a Consumer to subscribe to SIRIUS XM Services without the Consumer incurring a financial obligation to SIRIUS XM. The term

"Free Trial/Promotional Subscription Plan" shall not include any service credit(s) posted to the Consumer's account, or the receipt of SIRIUS XM Services or extension of a Self-pay Subscription Plan at no charge to the Consumer as a result of the non-refundable customer service credit(s).  A non-refundable customer service credit means a credit that SIRIUS XM provided to a subscriber as an accommodation for customer service purposes or other similar adjustments.

14. "Identifiable Loss" shall mean any identifiable deprivation, detriment or injury arising from any conduct addressed by this Assurance, even when the precise amount of the loss is not known. Identifiable Loss does not include consequential damages, pain and suffering damages, compensation for lost time or wages, or similar damages.

15. "Parties" means the State and SIRIUS XM.

16. "Point of Sale" means any location or transaction where a Self-pay Subscription Plan of SIRIUS XM is sold to Consumers, and in which the Consumer will incur a financial obligation to SIRIUS XM for the Self-pay Subscription Plan.

17. "Save" means the process, or the result of a process, utilized by SIRIUS XM for the purpose of retaining a Consumer who contacts SIRIUS XM to cancel or not renew a Self-pay Subscription Plan. This definition applies to other forms of the word "Save," including, but not limited to, "Saves," "Saved," and "Saving."

18. "Self-pay Subscription Plan" means any subscription plan for personal use where: (a) the Consumer incurs a financial obligation to SIRIUS XM; or (b) another individual Consumer incurs a financial obligation to SIRIUS XM on behalf of a specific Consumer (e.g., for a family member).

7

19. "Services" means the satellite and internet radio services that SIRIUS XM provides to Consumers. Services allow Consumers to listen to SIRIUS XM's broadcasts of music, sports, news, talk, entertainment, traffic, and weather information.

20. "SIRIUS XM" means and includes Sirius XM Radio Inc., its predecessor companies, successor companies, majority owned subsidiaries, divisions, employees, officers, directors, managers, assigns, and agents (e.g. Customer Service Representatives). SIRIUS XM does not include stockholders of SIRIUS XM or distributors of SIRIUS XM.

21. Capitalized terms used in this Assurance but not defined in this Definitions section shall have the meaning ascribed to them in the applicable section of this Assurance.

### III.   NON-ADMISSION

22. Except as otherwise expressly provided herein, nothing contained in this Assurance shall constitute an admission or concession by SIRIUS XM, nor evidence or findings supporting any of the allegations of fact or law raised by the Participating States or asserted in this Assurance, or of any violation or applicability of any state or federal law, rule or regulation, or any other liability or wrongdoing whatsoever. Neither this Assurance, nor any negotiations, statements or documents related thereto shall be offered or received in any legal or administrative process, proceeding or action as an admission, evidence, proof of, or to establish any violation of, liability under, wrongdoing in connection with, or applicability of any statute, rule or regulation, except as expressly allowed by state law.

### IV.   APPLICATION

23. Except as otherwise expressly provided in Article V, Section A, the provisions of this Assurance shall be limited to SIRIUS XM Self-pay Subscription Plans for personal use and shall not extend to any fleet subscription accounts with SIRIUS XM or individuals or entities receiving a Service

8

for the purpose of using such Service in a business establishment or any other place of public accommodation.

## V.    COMPLIANCE PROVISIONS

### A. FREE-TRIAL/PROMOTIONAL SUBSCRIPTION PLANS

24. If SIRIUS XM offers a Free Trial/Promotional Subscription Plan that automatically renews at the end of its subscription term, SIRIUS XM shall, as set forth herein, Clearly and Conspicuously disclose this fact and comply with the Advertising Disclosures, Point of Sale Disclosures, Automatic Renewal and Saves and Cancellation requirements contained in Article V, Section B through E, of this Assurance.

### B. DISCLOSURES IN ADVERTISING

25. In Advertising, SIRIUS XM shall Clearly and Conspicuously disclose and shall not misrepresent, expressly or by implication, any material term, condition, or obligation of SIRIUS XM's subscription plans.

26. To the extent that the State has an applicable state or local statute, rule, or regulation governing the use of the word "free," in Advertising, SIRIUS XM shall comply with such applicable statute, rule, or regulation.

27. SIRIUS XM shall, when Advertising Services in conjunction with a Self-pay Subscription Plan, Clearly and Conspicuously disclose all material terms, conditions, and obligations, including, but not limited to, if applicable, that:

    A. The Self-pay Subscription Plan will automatically renew at the end of the term for a new specified term, if applicable, at the rate applicable at the time of the renewal.

    B. The Consumer must contact SIRIUS XM by phone to cancel.

C. SIRIUS XM may elect to charge or deduct funds from the credit or debit card or financial account provided by the Consumer, or bill the Consumer for payment of the automatic renewal of the Self-pay Subscription Plan.

If an Advertisement contains a single offer that is repeated more than once or multiple offers that contain the same material limitations, then each required disclosure under this Paragraph shall Clearly and Conspicuously identify that it applies to all such offers.

In connection with any Internet, mobile, or any other electronic form of Advertisement, if third party mandatory policies, requirements, rules, or other restrictions would make the disclosure requirements of this Assurance impossible due to such third party mandatory policies, requirements, rules, or other restrictions on the parameters, format, size, and/or technical specifications, including, but not limited to, restrictions on the maximum number of characters, lines of text or graphics, or pixels, and/or file size, then such disclosures required by this Paragraph 27 shall not be construed to apply to the specific Advertisement. However, in instances where an Advertisement is of such limited space that the disclosures required by this Assurance cannot reasonably be Clearly and Conspicuously made in the Advertisement, but such disclosure would not otherwise be impossible, then such disclosure requirements including, specifically, the disclosure requirements specified in Paragraph 27, shall not be construed to apply to that specific type of disclosure or Advertisement; provided that the initial advertisement is not misleading or deceptive and all disclosures will be made prior to the Point of Sale in a manner that is not misleading or deceptive in compliance with applicable law. In any Advertisements covered by this Paragraph, the Advertisement shall also include a toll-free phone number, web site, click-through, link, pop-up or other method for the Consumer to access Clear and Conspicuous disclosures of the applicable terms and conditions.

## C. DISCLOSURES AT POINT OF SALE

28. At the Point of Sale, SIRIUS XM shall Clearly and Conspicuously disclose to the prospective Consumer the following information, if applicable to the Self-pay Subscription Plan:

   A. Initial billing frequency;

   B. Total charges for the initial billing interval, represented as either a total price or an itemization;

   C. Length of the initial term of the Self-pay Subscription Plan;

   D. The month, if available, or a statement describing when the Self-pay Subscription Plan will automatically renew;

   E. The applicable billing interval when the Self-pay Subscription Plan will automatically be charged or billed, if any (absent express modification by the Consumer or reduction of billing interval by SIRIUS XM);

   F. The Consumer may call to cancel at any time using the toll-free number provided;

   G. Any cancellation or early termination fee;

   H. The fact that the Consumer will automatically be charged or billed at the then current rate according to the chosen billing plan; and

   I. As applicable, if not already provided, the fact that SIRIUS XM will provide the Consumer with the customer agreement, if the sale of the Self-pay Subscription Plan is to a new Consumer, or that the Consumer can access the customer agreement through an internet website address provided by SIRIUS XM.

29. If, at the Point of Sale, SIRIUS XM is unable to obtain the Consumer's express acceptance of the applicable terms disclosed, then SIRIUS XM shall not activate the Self-pay Subscription Plan and shall not impose any fee by whatever name.

11

A. If the Point of Sale is via telephone, the Customer Service Representative or the telephone system shall inform the Consumer that SIRIUS XM will record the call. After informing the Consumer that SIRIUS XM will record the call, SIRIUS XM or SIRIUS XM's agent shall record the telephone call, wherein the Customer Service Representative Clearly and Conspicuously discloses to the Consumer all of the information listed in Paragraph 28 and obtains the Consumer's express acceptance to these terms; provided that the act of recording the telephone conversation is not prohibited by applicable statutes, rules, and regulations. Nothing herein shall be construed to prevent or prohibit SIRIUS XM from responding to questions, concerns, or objections, if the Consumer does not immediately expressly accept the terms disclosed.

B. If the Point of Sale is online, SIRIUS XM shall Clearly and Conspicuously disclose to the Consumer all of the terms listed in Paragraph 28 on the internet website. The disclosure(s) of the terms listed in Paragraph 28 shall be in Direct Proximity or immediately prior to a submit button, a "check box" or a "pop-up" that the Consumer must click or select as the Consumer's express acceptance of the terms disclosed. The button, check box or pop-up shall be Clearly and Conspicuously marked that by clicking the button, check box or pop-up, the Consumer confirms the purchase of Services under the Self-pay Subscription Plan. If a check box or pop-up is used, it shall not contain a pre-checked box as a default setting. If the Consumer does not click or select the button or the check box or closes out of the pop-up window, the Consumer shall not be able to proceed further and SIRIUS XM shall not activate the Self-pay Subscription Plan.

C. If the Point of Sale is done by any other method, SIRIUS XM shall ensure that Consumers have been provided Clear and Conspicuous disclosures of all of the terms

listed in Paragraph 28 and the Consumer's express acceptance of all of the terms

disclosed has been obtained prior to activating the Self-pay Subscription Plan.

30. At the Point of Sale, SIRIUS XM shall Clearly and Conspicuously inform the Consumer that,

within five (5) business days following completion of the sale, SIRIUS XM shall send a notice

to Consumers that provide an email address that confirms the purchase or activation of the

selected Self-pay Subscription Plan ("Confirmation Notice"). In the case of remit forms sent to

SIRIUS XM by the Consumer, the completion of the sale shall be deemed to occur on the date

SIRIUS XM receives and completes the processing of the remit form. The email shall indicate

in the "from" line, SIRIUS XM, and the subject line shall be titled "CONFIRMATION OF

YOUR RECENT SIRIUS XM TRANSACTION," or similar language. This title shall be placed

on the top portion of the body of the Confirmation Notice. SIRIUS XM will send the

Confirmation Notice electronically to the Consumer to the email address provided by the

Consumer, unless the Consumer objects to receiving the Confirmation Notice via email and

requests a mailed copy, then SIRIUS XM will send the Confirmation Notice via postal mail in

lieu of email. In the case of a Consumer purchasing or activating a Self-pay Subscription Plan

via the internet, and in lieu of the Confirmation Notice, the Consumer shall be presented, at the

conclusion of such transaction, a printable confirmation containing the information required by

this Paragraph ("Printable Confirmation"). The Confirmation Notice or Printable Confirmation

shall Clearly and Conspicuously include the following information, at a minimum, in the body of

the Confirmation Notice or Printable Confirmation, if applicable to the selected Self-pay

Subscription Plan:

 A. Account number, which may be abbreviated in accordance with applicable laws;

 B. Name and type or description of the Self-pay Subscription Plan;

 C. The fact that the Self-pay Subscription Plan has been purchased;

D. Self-pay Subscription Plan start date;

E. Total subscription charges, or itemization per billing statement or period, for the initial term of the Self-pay Subscription Plan;

F. Length of the Self-pay Subscription Plan, and the date and month when the Self-pay Subscription Plan will automatically renew, if applicable;

G. The applicable billing interval during which the Self-pay Subscription Plan will automatically be charged or billed, if any (absent express modification by the Consumer or reduction of billing interval by SIRIUS XM);

H. If applicable, the fact that the Service under the Self-pay Subscription Plan will automatically renew and that in order to cancel the Self-pay Subscription Plan the Consumer must call SIRIUS XM prior to renewal at the toll-free telephone number provided;

I. Any cancellation or early termination fee;

J. The fact that the Consumer will automatically be charged or billed at the then current rate according to the chosen billing plan; and

K. The fact that SIRIUS XM will provide the customer agreement to Consumers who are first time subscribers to the Service under the Self-pay Subscription Plan and have not previously been provided with the customer agreement, or that any Consumer can access the customer agreement through an internet website address provided by SIRIUS XM or by calling SIRIUS XM's customer service number and requesting that a copy of the customer agreement be sent to them.

The information set forth in the Confirmation Notice or Printable Confirmation shall be subject to SIRIUS XM's policies and procedures governing privacy, personally identifiable information, and the disclosure of customer information; provided, however, the SIRIUS XM policies and

procedures governing privacy, personally identifiable information, and the disclosure of customer information shall not be used to circumvent the requirements of this Assurance and shall not be contrary to applicable law.

31. The Confirmation Notice or Printable Confirmation shall be a stand-alone document and shall not contain any Advertisements, unless such Advertisements are on stand-alone documents, clearly separated inserts, or, if part of the letter, web page or email, in a separate section or area that does not distract from or obstruct the Clear and Conspicuous message of the Confirmation Notice or Printable Confirmation.

### D. AUTOMATIC RENEWAL OF SELF-PAY SUBSCRIPTION PLANS

32. To the extent that the State has an applicable state or local statute, rule, or regulation governing the automatic renewal of Self-pay Subscription Plans, SIRIUS XM shall comply with such statute, rule, or regulation.

33. For Consumers with a Self-pay Subscription Plan with a term longer than six (6) months, SIRIUS XM shall provide Clear and Conspicuous advance notice to Consumers regarding the upcoming automatic renewal of the Consumer's Services ("Automatic Renewal Notice"). The Automatic Renewal Notice may be provided by SIRIUS XM via email or postal mail. The email shall indicate in the "from" line, SIRIUS XM, and the subject line shall be titled "NOTICE OF AUTOMATIC RENEWAL OF YOUR SIRIUS XM SERVICE" or similar language. This title shall be placed on the top portion of the body of the Automatic Renewal Notice. If the Consumer did not provide an email address to SIRIUS XM, then SIRIUS XM will send the Automatic Renewal Notice via postal mail in lieu of email. If the notice is sent by postal mail, the mailing envelope shall be labeled "Important Information" or a label of similar language. The Automatic Renewal Notice shall Clearly and Conspicuously include the following information,

15

at a minimum, in the body of the Automatic Renewal Notice, if applicable to the Self-pay Subscription Plan:

A. Consumer's name, if sent by postal mail;

B. Name and type or description of the Self-pay Subscription Plan;

C. Billing frequency;

D. Total subscription charges, or itemization per billing statement or period, for the next billing period, which shall exclude taxes, governmental fees and other mandatory charges, but include a statement that there will be taxes, governmental fees, and other mandatory charges;

E. Length of the Self-pay Subscription Plan and the date of the month when the Self-pay Subscription Plan will automatically renew, if applicable;

F. The applicable billing interval during which the Self-pay Subscription Plan will automatically be charged or billed, if any (absent express modification by the Consumer or reduction of billing interval by SIRIUS XM);

G. The fact that the Service under the Self-pay Subscription Plan will automatically renew and that in order to cancel the Self-pay Subscription Plan the Consumer must call SIRIUS XM prior to renewal at the toll-free telephone number provided;

H. The information necessary on how to contact SIRIUS XM to cancel the Self-pay Subscription Plan;

I. The fact that a cancellation or early termination fee may apply, if applicable, and the amount or method of calculation, if known;

J. The fact that when the Self-pay Subscription Plan automatically renews, the Consumer will automatically be charged or billed at the then current rate according to the chosen billing plan; and

16

K. The fact that the Consumer can access the customer agreement through an Internet website address or link provided by SIRIUS XM or by calling SIRIUS XM's customer service number and requesting that a copy of the customer agreement be sent to them.

The information set forth in the Automatic Renewal Notice shall be subject to SIRIUS XM's policies and procedures governing privacy, personally identifiable information, and the disclosure of customer information; provided, however, the SIRIUS XM policies and procedures governing privacy, personally identifiable information, and the disclosure of customer information shall not be used to circumvent the requirements of this Assurance and shall not be contrary to applicable law.

34. SIRIUS XM shall send the Automatic Renewal Notice, as required by the provisions of Paragraph 33, to the Consumer at least ten (10) days, but not more than sixty (60) days, before the date when the Self-pay Subscription Plan will automatically be charged or billed, or as otherwise required by applicable law.

35. The Automatic Renewal Notice shall be a stand-alone document and shall be sent by electronic or by postal mail and shall not contain any Advertisements, unless such Advertisements are on stand-alone documents or clearly separated inserts; provided that Advertisements shall be permitted on the back or reverse side of any Automatic Renewal Notice so long as the back or reverse side does not contain any of the information required by Paragraph 33 and the Advertisement does not distract from or obstruct the Clear and Conspicuous message of the Automatic Renewal Notice.

### E. CANCELLATION OF SELF-PAY SUBSCRIPTION PLANS

36. SIRIUS XM shall process a Consumer's request to cancel Services under a Self-pay Subscription Plan by telephone toll free ("Cancellation Call"). SIRIUS XM shall ensure that Customer Service Representatives are available to process Cancellation Calls during standard

Customer Care (or similar department) business hours, excluding holidays. During times outside of the hours of availability, SIRIUS XM shall provide a Clear and Conspicuous telephone notification of the hours of availability. SIRIUS XM shall adequately staff its customer service function, including providing adequate staffing to respond to Consumers who call to cancel their Self-pay Subscription Plan, and ensure that if the projected hold time is for longer than approximately three minutes that Consumers are immediately informed of how long the anticipated wait may be and offered the opportunity to leave a phone number to receive a return phone call. The above requirements shall not apply during abnormal disruptions, unforeseen technological or systems glitches or outages, inadvertent human error, or when there are operational limitations due to acts of nature (such as hurricane, flooding, earthquake, volcanic eruption, etc.) or other acts beyond SIRIUS XM's control, including, but not limited to, civil unrest, acts of war, riots, strikes, and similar acts. SIRIUS XM may, at its discretion, give Consumers who are affected by these disruptions an extension of time to cancel. SIRIUS XM shall be reasonable in granting Consumers extensions of time to cancel when SIRIUS XM has its own notice of such events or if Consumers state that they were affected by such disruptions. Further:

A. As part of the quality assurance program required by Paragraph 43, SIRIUS XM shall monitor, at a minimum, a statistically significant random sampling of Cancellation Calls to ensure compliance with the Save requirements specified in subparagraphs B-F of this Paragraph;

B. SIRIUS XM shall not engage in harassing or abusive Save attempts and a Customer Service Representative shall promptly and without delay, move on to the next Save attempt or cancellation, depending on the circumstances, when a Consumer declines a rebuttal offer;

18

C. If, during a Cancellation Call, a Consumer declines a Save attempt or rebuttal offer and requests that SIRIUS XM not call the Consumer in the future, SIRIUS XM shall note the Consumer's request internally and proceed with processing the Cancellation Call without delay;

D. If the Customer Service Representative's Save attempts are unsuccessful, the Customer Service Representative shall proceed without unreasonable delay with processing the Cancellation Call; however, the time required to process the Consumer's request and service the account, including but not limited to the time spent answering the Consumer's questions, reviewing the cancellation options available to the Consumer, processing the cancellation, or adding required comments or notes to the account records, shall not constitute unreasonable delay. The Customer Service Representative shall Clearly and Conspicuously disclose to the Consumer the cancellation options available, including the earliest date by when the Consumer may cancel in accordance with his or her customer agreement; the material consequences of the option selected by the Consumer, including, but not limited to, the effective cancellation date; the cancellation fee amount, if any; the method of refund or credit, if applicable; and the date or approximate time frame when the Consumer will receive the refund or credit, if applicable. After the processing of the Consumer's cancellation request has been completed, the Customer Service Representative shall provide to the Consumer over the telephone a unique cancellation confirmation number, and confirm the amount that will be refunded or credited, if applicable. The Customer Service Representative shall also explain to the Consumer that within five (5) business days SIRIUS XM will send the Consumer an email confirmation of the cancellation, and that if the Consumer's email address is not on file with SIRIUS XM that the Consumer should write down the unique cancellation confirmation number;

19

E. SIRIUS XM shall honor the effective cancellation date and shall provide any refund or credit owed (excluding non-refundable customer service credits), as applicable, in a manner that complies with Paragraph 49 of this Assurance and is consistent with any representations made to the Consumer; and

F. If SIRIUS XM's Save attempt is successful and the Consumer agrees to continue Services in an existing or new Self-pay Subscription Plan, which has billing and automatic renewal terms that differ from the Consumer's existing Self-pay Subscription Plan, SIRIUS XM shall provide the Consumer with a Confirmation Notice in compliance with Paragraph 30 of this Assurance and disclose any other material change in term(s) in compliance with Article V, Section D of this Assurance, as applicable. If the Save provides the Consumer with a Free Trial/Promotional Subscription Plan that automatically renews at the end of its subscription term, SIRIUS XM shall, as applicable, comply with Paragraph 24 of this Assurance.

37. SIRIUS XM shall Clearly and Conspicuously disclose to Consumers how to cancel their Self-pay Subscription Plan. This disclosure shall be made both on SIRIUS XM's internet website and in the customer agreement.

38. Within five (5) business days following completion of the Cancellation Call, SIRIUS XM shall send a notice to Consumers who provide an email address that confirms the cancellation of the Self-pay Subscription Plan ("Cancellation Notice"). The email shall indicate in the "from" line, SIRIUS XM, and the subject line shall be titled "NOTICE OF CANCELLATION OF YOUR SIRIUS XM SERVICE," or similar language. This title shall be placed on the top portion of the body of the Cancellation Notice. The Cancellation Notice shall Clearly and Conspicuously include the following information in the body of the Cancellation Notice, unless the required information is provided in a separate notice:

20

A. Account number, which may be abbreviated in accordance with applicable laws;

B. The fact that the Self-pay Subscription Plan has been cancelled;

C. The unique cancellation number;

D. Effective cancellation date;

E. Cancellation or early termination fee, if any;

F. Refund amount and method of refund, if any;

G. If applicable, the date or approximate time frame when the Consumer will receive the refund, in a manner that complies with Paragraph 49 of this Assurance;

H. The Cancellation Notice shall be a stand-alone electronic document and shall not contain any Advertisements, unless such materials are on stand-alone electronic documents, or, if part of the communication, web page or email, in a separate section or area that does not distract from or obstruct the Clear and Conspicuous message of the Cancellation Notice; and

I. The Cancellation Notice may be sent with the final invoice, provided the Cancellation Notice complies with the requirements of this Paragraph. ·

The information set forth in the Cancellation Notice shall be subject to SIRIUS XM's policies and procedures governing privacy, personally identifiable information, and the disclosure of customer information; provided, however, the SIRIUS XM policies and procedures governing privacy, personally identifiable information, and the disclosure of customer information shall not be used to circumvent the requirements of this Assurance and shall not be contrary to applicable law.

39. If a Consumer attempts to cancel his or her Self-pay Subscription Plan by contacting SIRIUS XM using the consumer complaint form on SIRIUS XM's website, or at the postal or email address for customer care that is provided on SIRIUS XM's website or in the customer

21

agreement, then SIRIUS XM shall attempt to contact the Consumer within five (5) business days to provide the Consumer with instructions for toll-free telephone cancellation. Should SIRIUS XM accept cancellations by any means other than telephone, SIRIUS XM shall provide a Cancellation Notice in accordance with Paragraph 38 of this Assurance.

40. SIRIUS XM shall not continue to charge a Consumer's debit or credit card, deduct funds from a Consumer's bank account, or bill a Consumer for a Self-pay Subscription Plan cancelled by the Consumer, after the effective cancellation date of that cancelled Self-pay Subscription Plan; provided that bills or invoices that are in process or have already been processed, and any charges or deduction of funds that cannot, under reasonable business procedures, be unscheduled within five (5) days of the effective cancellation date shall not be considered a violation of this provision. Notwithstanding the foregoing, in no event shall a payment for a Self-pay Subscription Plan cancelled by the Consumer be processed after five (5) days following the Consumer's cancellation of that Self-pay Subscription Plan; provided, however, this provision shall not apply to payment(s) for Services rendered prior to the Consumer's cancellation of the Self-pay Subscription Plan. For a Self-pay Subscription Plan that is cancelled by the Consumer, SIRIUS XM shall refund any charge, deduction, or payment, which has not been otherwise refunded, credited, cancelled, reversed or charged back, that is made or accepted for Services provided by SIRIUS XM after the effective cancellation date of the cancelled Self-pay Subscription Plan, in a manner that complies with Paragraph 49 of this Assurance and is consistent with any representations made to the Consumer.

## F. POLICIES AND PROCEDURES

41. SIRIUS XM shall adopt and implement policies and procedures that:

    A. Ensure compliance with this Assurance; and

    B. Prohibit incentive compensation to any Customer Service Representative acting on behalf of SIRIUS XM that is solely contingent upon their obtaining a minimum number, percentage, or quota of Saves.

42. SIRIUS XM shall, or shall cause its agents, to record all Cancellation Calls; provided that the act of recording the telephone conversation is not prohibited by applicable statutes, rules, and regulations. Nothing herein shall be construed to prevent or prohibit SIRIUS XM from responding to questions, concerns, or objections from the Consumer during the Cancellation Call. For any recorded telephone communications that result in a Consumer continuing to be charged or billed by SIRIUS XM, SIRIUS XM shall save the recordings for a minimum of thirty (30) months and, upon the written request of the State, shall provide the recordings to the State if it is able to identify the recording based on the information provided by the State, within sixty (60) days unless SIRIUS XM requests an extension of additional time, in such case, the State agrees to provide good faith extensions as needed.

43. SIRIUS XM shall implement and maintain a quality assurance program to ensure that calls received from Consumers are handled in accordance with the requirements of this Assurance, including but not limited to complying with the provisions of this Assurance governing sales, automatic renewal, Save attempts and cancellation of Self-pay Subscription Plans, as applicable.

44. SIRIUS XM shall ensure that all Customer Service Representatives who communicate with Consumers about the Services of SIRIUS XM are trained to act in compliance with this Assurance.

45. To the extent necessary, SIRIUS XM shall ensure that all current and future training materials and scripts are modified to comply with this Assurance.

## G. COMPLAINT HANDLING

46. SIRIUS XM shall maintain all Consumer Complaints and SIRIUS XM's responses to those Consumer Complaints for a period of at least thirty (30) months from the date of final response of the Consumer Complaint. The Consumer Complaint file shall include the Consumer Complaint and all of the items listed in Paragraph 48 that are maintained in the ordinary course of business. SIRIUS XM shall maintain Consumer Complaint files in a manner and format that allows SIRIUS XM to comply with the requirement to produce Consumer Complaints in a timely manner and in accordance with this Assurance. The Consumer Complaint file of a Consumer residing in the State shall be provided to that State, upon written request, within sixty (60) days, unless SIRIUS XM requests an extension of additional time, in such case, the State agrees to provide good faith extensions as needed.

47. Within thirty (30) days of the Execution Date, SIRIUS XM shall appoint a person or persons, or an entity, to act as a direct contact for the State for the resolution of Consumer Complaints. SIRIUS XM shall provide the State with the name(s), title(s), address(es), telephone number(s), facsimile number(s) and electronic mail address(es) of the person(s) or entity(ies), within thirty (30) days of the appointment of such person(s) or entity(ies).

48. Upon written request by the State, following the Execution Date, SIRIUS XM shall provide its response to each Consumer Complaint relating to conduct occurring after the Execution Date, which shall include:

    A. The date SIRIUS XM received such Consumer Complaint;

    B. A description or copy of such Consumer Complaint; and

    C. The final resolution of such Consumer Complaint.

Upon further written request by the State, SIRIUS XM shall provide copies of any additional underlying correspondence documentation, or background information, including call

recordings, related to the Consumer Complaint, and SIRIUS XM's written response or compliance with the Consumer Resolution Program in this Assurance. SIRIUS XM reserves the right to object to any requests under this Paragraph as set forth in Paragraph 116.

49. Whenever SIRIUS XM agrees to refund to a Consumer any amount of money, SIRIUS XM shall process the refund promptly, but not later than forty five (45) days from the date of agreeing to do so. SIRIUS XM shall provide the Consumer with an estimate of approximately how long it may take to receive the refund.

## VI.   COMPLAINT RESOLUTION AND RESTITUTION

### A. TIME FRAME

50. Time Period for filing an Eligible Complaint:

  A. There will be an open period of one hundred and fifty (150) days after the Execution Date for a Consumer Complaint to be filed by a complaining Consumer.

  B. The State will have an additional thirty (30) days thereafter to submit Consumer Complaints to SIRIUS XM for consideration under the Complaint Resolution Program. The State agrees to provide SIRIUS XM's counsel, pursuant to Paragraph 102, with notice if more time is needed and SIRIUS XM agrees to provide a good faith extension as needed.

  C. Any timely filed Consumer Complaint previously received and processed by SIRIUS XM prior to the Execution Date shall be reconsidered as part of the Complaint Resolution Program if it is "resubmitted" by the complaining Consumer or the State, in either case claiming it remains unresolved. An Eligible Complaint does not include any new complaint from a Consumer Complaint entity that is not initially submitted through the Complaint Resolution Program. The State shall review information available in the complaint file regarding the Consumer Complaint to determine if it is unresolved prior to

25

resubmission. The State may also resubmit a Consumer Complaint if the State is unable to determine from the complaint information in its possession whether it is resolved. SIRIUS XM reserves the right to return the Consumer Complaints for further review if SIRIUS XM believes the complaints processed for resubmission by the State include complaints previously resolved.   In such instances, SIRIUS XM shall provide information and/or documentation regarding why it believes each particular Consumer Complaint has been resolved in order to assist the State in determining the next appropriate step.

51. Upon receipt of a Consumer Complaint, SIRIUS XM shall send the submitting Consumer both a letter, and a form requesting additional information (the "Form"), copies of which are attached as Exhibits B and C, respectively. Consumers shall have ninety (90) days from receipt of the letter and Form to submit the completed Form to SIRIUS XM. The Form shall provide Consumers with a mailing address, fax number and/or other method for submitting it to SIRIUS XM.   SIRIUS XM may accept Forms after the timeframe in appropriate extraordinary circumstances (e.g. military deployment, hospitalization, etc.), at its own discretion.

52. Upon receipt of the Form from a Consumer, SIRIUS XM shall determine within ninety (90) days if the Consumer Complaint is an Eligible Complaint.

   A. If SIRIUS XM determines in good faith that the Consumer Complaint does not constitute an Eligible Complaint and the Identifiable Loss set forth on the Form exceeds $50.00, then SIRIUS XM shall advise the Consumer of the ineligibility through a letter, a copy of which is attached as Exhibit D, within fifteen (15) days of SIRIUS XM's determination. The Consumer shall have the right to resubmit a Consumer Complaint determined to be ineligible to the Facilitator, with a request for re-review and a detailed explanation of why the Consumer believes the submitted Consumer Complaint is an Eligible Complaint.

26

B. If SIRIUS XM determines that the Consumer Complaint does not constitute an Eligible Complaint and the Identifiable Loss is $50.00 or less, then the Consumer Complaint shall be listed on the Complaint Eligibility Determination Report. SIRIUS XM shall send Consumers a letter, a copy of which is attached as Exhibit E, within fifteen (15) days of determining that the Consumer Complaint is not an Eligible Complaint.

53. Upon receipt of the Complaint Eligibility Determination Report, the State may request in writing that SIRIUS XM reconsider a determination regarding the denial of a Consumer Complaint, classification of a Consumer Complaint or whether or not the amount of Identifiable Loss is below $50.00. If a dispute remains, either the State or SIRIUS XM may file a request for review with the Facilitator to determine if a submitted Consumer Complaint is an Eligible Complaint or if the amount of the Identifiable Loss exceeds $50.00. Challenges to SIRIUS XM's determination of ineligibility or the amount of the Identifiable Loss shall be decided by the Facilitator as soon as practicable.

## B. CONSUMER RESOLUTION PROGRAM

54. SIRIUS XM shall have a reasonable time, not to exceed an additional one hundred and thirty days (130) days, after receiving a Form that is determined to be an Eligible Complaint, to attempt to resolve the Eligible Complaint with the Consumer; provided, however, if the number of Forms exceed 2,125, the one hundred and thirty (130) day period for resolving Eligible Complaints shall be extended by an additional sixty (60) days for every 1,240 Forms received beyond the initial 2,125 Forms. If SIRIUS XM is contacted by a Consumer inquiring about the status of his/her Form, SIRIUS XM will explain the process to the Consumer and invite the Consumer to check back with SIRIUS XM on the status at a later date.

55. If SIRIUS XM and the Consumer resolve the Consumer Complaint, SIRIUS XM shall provide the accepted relief within thirty (30) days of the Consumer's acceptance of the offer. The Consumer shall not be asked or be required to sign a release in order to accept the offer.

56. If the Consumer completes the Form and the Identifiable Loss relief or amount sought can be determined from SIRIUS XM's records and SIRIUS XM agrees with the request, then SIRIUS XM is not required to contact the Consumer and may instead send a letter, attached as Exhibits F1 and F2, to the Consumer agreeing with the Consumer's requested relief. Any such relief shall be processed by SIRIUS XM within thirty (30) days after sending the Consumer the letter. The Consumer shall not be asked or be required to sign a release in order to accept the offer.

57. If SIRIUS XM and the Consumer are unable to reach a resolution then SIRIUS XM shall: (i) if the Eligible Complaint involves a request for an Identifiable Loss of $100.00 or less, SIRIUS XM shall include the Consumer Complaint on the Complaint Eligibility Determination Report, with a brief description of the nature of the complaint and mediation history and send the Consumer a letter, a copy of which is attached as Exhibit G, or (ii) if the Eligible Complaint involves an Identifiable Loss in excess of $100.00, SIRIUS XM shall forward the Eligible Complaint and the Form to the Facilitator and send the letter, attached as Exhibit H, to the Consumer.

58. Upon receipt of the Complaint Eligibility Determination Report, the State may request in writing that SIRIUS XM reconsider a determination regarding the denial of a Consumer Complaint. If a dispute remains, either the State or SIRIUS XM may file a request for review with the Facilitator to determine what, if any, relief the Consumer is entitled to. Challenges to SIRIUS XM's determination shall be decided by the Facilitator as soon as practicable.

59. Any Consumer's acceptance of relief from SIRIUS XM under this Assurance shall not restrict a private right of action other than to entitle SIRIUS XM to assert a set-off.

## C. FACILITATOR REQUEST FOR RECONSIDERATION PROGRAM

60. If SIRIUS XM and the Consumer cannot resolve an Eligible Complaint, and the Identifiable Loss being sought is in excess of $100.00, then the Consumer shall be notified that his/her Form will be submitted to the Facilitator for resolution. SIRIUS XM shall send the Consumer a letter attached as Exhibit H notifying the Consumer of the fact that the Consumer's Form has been sent to the Facilitator and providing the Consumer the information set forth in Paragraphs 62(A) and 62(B).

61. During the pendency of the review by the Facilitator, SIRIUS XM may continue to communicate with the Consumer and attempt to resolve the Eligible Complaint with the Consumer. If the Consumer accepts an offer from SIRIUS XM, then SIRIUS XM shall provide the agreed upon resolution within thirty (30) days of the Consumer's written acceptance of the offer. Consumers shall be informed that they are not required to accept SIRIUS XM's offer and may elect to proceed to have their Forms reviewed by the Facilitator. Consumers shall not be asked or required to sign a release to accept the offer. The letters to be used in this process are attached as Exhibits I1 and I2.

62. The Facilitator shall be required to review the terms of this Assurance and the applicable records relating to any unresolved Eligible Complaint, including:

    A. The Consumer record provided by SIRIUS XM to the Facilitator and the Consumer; and

    B. The Form and any other information provided by the Consumer. SIRIUS XM may also submit additional information to the Facilitator as long as it has been provided to the Consumer previously or is provided to the Consumer simultaneously.

63. The Facilitator shall review unresolved Eligible Complaints via telephonic review upon request by SIRIUS XM, the Consumer, the State, or the Facilitator. The Consumer shall be advised of

his or her option to request a telephonic review when notified that his or her unresolved Eligible Complaint is being submitted to the Facilitator.

64. The Facilitator shall determine whether the Consumer is eligible for a refund payment or related relief (such as account write-off or cancellation of contract) with respect to Identifiable Losses, based on the above and the nature of the Consumer's unresolved Eligible Complaint under the terms of this Assurance and applicable law.

65. If additional information is deemed necessary by the Facilitator, he/she will request it from SIRIUS XM and the Consumer.

66. The Facilitator process will be handled in a consumer-friendly manner.

67. The Facilitator may only award monetary relief consistent with the Identifiable Losses suffered by the Consumer.

68. If the Facilitator determines that a Consumer is eligible for relief, the Facilitator shall send a letter to SIRIUS XM and the Consumer within thirty (30) days of reaching that determination. SIRIUS XM shall have thirty (30) days from the receipt of the Facilitator's decision to provide the Consumer with any required payment or other relief. Payment provided under this paragraph shall include a reference to this Assurance and Complaint Resolution Program.

69. If the Facilitator determines that a Consumer is not eligible for relief, the Facilitator shall send a letter to SIRIUS XM and the Consumer within thirty (30) days explaining his/her determination.

70. The State may elect to receive copies of the determinations and applicable letters from the Facilitator. The Facilitator shall provide the information to the State, if requested.

71. While the review of the Eligible Complaint is pending with the Facilitator, SIRIUS XM shall cease all collection activities on that Consumer, including instructing third parties to cease any applicable collection activities, relating to the subject matter of the Eligible Complaint.

30

## D. FACILITATOR

72. SIRIUS XM shall select the Facilitator, subject to approval by the Executive Committee. The Facilitator shall enter into a contractual relationship with SIRIUS XM consistent with the terms of this Assurance. The Facilitator shall have experience with consumer protection law or a demonstrated ability to mediate solutions so that determinations are completed in a correct and timely manner. The Facilitator can be removed after six (6) months, or sooner if exigent circumstances exist as determined by a majority of the Attorneys General from the Executive Committee, for Cause, by either SIRIUS XM or a majority vote of the Attorneys General from the Executive Committee states. For the purpose of this Paragraph, Cause shall mean: (a) a breach by the Facilitator of the terms of this Assurance, including the failure of the Facilitator to comply with the terms and limitations of this Assurance; (b) any act of dishonesty, misappropriation, embezzlement, intentional fraud or similar conduct by the Facilitator; (c) any intentional act of bias or prejudice in favor or against either SIRIUS XM or Consumers by the Facilitator; or (d) conduct by the Facilitator that demonstrates unfitness to serve in any administrative capacity. Cause shall not include disagreements with the decisions of the Facilitator pursuant to this Assurance, unless there is a clear pattern in the Facilitator's decisions that demonstrates or shows that the Facilitator has not been acting as a neutral third party in rendering decisions.

73. The Facilitator shall meet with the Executive Committee and SIRIUS XM at an agreed to location prior to commencement of the Complaint Resolution Program to confer and consider suggestions for the Program's processes and procedures.

74. Upon request by SIRIUS XM or the State, the Facilitator shall meet with SIRIUS XM and the State, or confer by telephone, regarding the Complaint Resolution Program process. If such

31

conversations result in a proposed change to the agreed upon procedures, any such change shall require written approval from the Executive Committee and SIRIUS XM.

75. All reasonable fees and out-of-pocket expenses of the Facilitator shall be paid by SIRIUS XM. No costs relating to the Facilitator shall be borne by the Participating States.

76. If for some reason the Facilitator is unable to act as the Facilitator or is unable to complete his/her duties, any subsequent Facilitator shall be selected by SIRIUS XM, subject to approval by the Executive Committee.

## E. REPORTING ON THE RESOLUTION PROGRAM

77. On or before each January 1 and July 1, starting on July 1, 2015 and ending when the Resolution Program is completed, SIRIUS XM shall provide a state-specific Complaint Eligibility Determination Report and a separate state-specific report on the Facilitator's Review of the Eligible Complaints received from Consumers to the State.

78. The Complaint Eligibility Determination Report shall set forth the following information:  (a) a brief description of the nature of each Consumer Complaint received by SIRIUS XM; (b) the name and address and other contact information in SIRIUS XM's possession of each Consumer who filed a Form; (c) the alleged amount of the Identifiable Loss, if any; (d) whether the Consumer Complaint was determined by SIRIUS XM to be an Eligible Complaint and, if not an explanation of ineligibility; (e) as applicable, the resolution, including the amount paid, if any, by SIRIUS XM; and (f) a list of Consumers with an Eligible Complaint who could not be located by SIRIUS XM.

79. The Facilitator's Report shall set forth the following information:  (i) the name and address and other contact information in SIRIUS XM's possession of each Consumer who filed an Eligible Complaint for consideration; (ii) the status of the Eligible Complaint; (iii) if applicable, the resolution of the Eligible Complaint if the process is complete, or, if applicable, the

32

determination of the Facilitator, including the resolution; and (iv) the total amount paid to Consumers in the State during the reporting period.

## F. MISCELLANEOUS

80. All Consumer checks issued shall be:

    A. Negotiable for at least 180 days from the date of issuance; and

    B. Mailed by United States First-Class Mail marked "address correction requested."

81. Un-cashed Consumer checks shall be treated in accordance with applicable State unclaimed property/escheat laws or paid to any other fund designated by State law. SIRIUS XM shall also provide to the Attorney General a copy of any report given to the State unclaimed property entity at the time it is provided by SIRIUS XM to the State unclaimed property entity.

82. SIRIUS XM agrees in good faith not to unreasonably refuse to handle any Consumer Complaints that were timely received by the State but were not forwarded to SIRIUS XM in conformity with this Assurance due to mistake, or other good faith reason, if received prior to completion of the Complaint Resolution Program.

83. SIRIUS XM represents and warrants that it has never in the past reported any Consumer to a credit reporting agency for failure to pay an outstanding account balance. For the avoidance of doubt, for one (1) year from the Execution Date, SIRIUS XM shall not report any Consumer to a credit reporting agency for failure to pay an outstanding account balance. Within forty-five (45) days of the resolution of an Eligible Complaint, SIRIUS XM shall cease and withdraw all collection efforts applicable to the complaining Consumer that relates to the subject matter of the Eligible Complaint.

## VII.  PAYMENT TO THE STATE

84. Subject to the terms and conditions of this Paragraph, SIRIUS XM shall pay Three Million Eight Hundred Thousand dollars ($3,800,000), to be divided and paid by its counsel Manatt Phelps &

Phillips LLP ("Manatt"), directly to each Attorney General participating in this settlement as identified on Exhibit A. Such payment shall be due and payable by SIRIUS XM to Manatt, for prompt distribution by Manatt to each Attorney General participating in this settlement, thirty (30) days following the first business day after the later of: (a) the execution and delivery of this Assurance, or an agreement substantially identical to this Assurance, by SIRIUS XM and the appropriate governmental agencies of each of the States listed on Exhibit A; and (b) receipt by Manatt from each applicable Attorney General of a written notice that final judicial or other approval of an executed copy of this Assurance, or an agreement substantially identical to this Assurance, in each State in which such approval is required has been secured. Such amount shall be divided and paid by Manatt directly to each of the Attorneys General in an amount to be designated by and in the sole discretion of the Executive Committee. Each of the Attorneys General agrees that the Executive Committee has the sole authority to designate such amount to be paid to each Attorney General and that SIRIUS XM shall have fulfilled its obligations under this Paragraph upon such payment to Manatt. At the sole discretion of the Attorney General of Nebraska, the payment to the Attorney General of Nebraska shall be used for reimbursement of attorneys' fees and/or investigative costs; used for future public protection purposes; placed in or applied to the consumer protection enforcement fund, consumer education, litigation, or local consumer aid fund or revolving fund, or similar fund by whatever name; or used for other consumer protection purposes permitted by state or local statutes, rules, or regulations. In no event shall any portion of this payment be characterized as a fine, civil penalty or forfeiture by SIRIUS XM to any Participating State. The State of Nebraska's portion of these settlement funds is $55,540.48, which will be placed in the State Settlement Cash Fund.

## VIII.  GENERAL PROVISIONS

85. To the extent that SIRIUS XM makes changes to its Advertising or business acts, practices, policies, procedures, or materials to achieve or to facilitate conformance with this Assurance, the changes shall not be taken as or construed to be an admission by SIRIUS XM of any kind, and shall not constitute or be used as evidence, of the State's Allegations of facts, SIRIUS XM's violation of any law, rule or regulation, or liability or wrongdoing, including an admission by SIRIUS XM that any of its Advertising or business acts, practices, policies, procedures, or materials are or have been in violation of the State's Consumer Statutes, except to the extent required expressly by state law.

86. Nothing in this Assurance shall be construed to affect, restrict, limit, waive, alter, or create any private right of action that a Consumer may hold against SIRIUS XM, unless explicitly set forth in state law.

87. This Assurance is made without trial or adjudication of any issue of fact or law or finding of liability of any kind. The settlement negotiations resulting in this Assurance have been undertaken by the Parties in good faith and for settlement purposes only.

88. Neither this Assurance nor any evidence of any settlement negotiations or settlement communications resulting in this Assurance shall be offered or received in evidence in any action or proceeding for any purpose other than the enforcement of this Assurance, related actions or enforcement proceedings, or in a private right of action if expressly allowed under the State's Consumer Statute.

89. Neither this Assurance nor anything herein shall be construed or used as a waiver, limitation, or bar on any defense otherwise available to SIRIUS XM, or on SIRIUS XM's right to defend itself from or make arguments in any pending or future legal or administrative action, proceeding, state or federal claim or suit, including without limitation, private individual or class action

35

claims or suits, relating to SIRIUS XM's conduct prior to the execution of this Assurance, or to the existence, subject matter, or terms and conditions of this Assurance, except to the extent required by law.

90. In the event that any statute, rule or regulation pertaining to the subject matter of this Assurance is enacted, promulgated, modified, or interpreted by a federal or state court, or any federal or state government, or any federal or state agency, or a court of competent jurisdiction holds that such statute, rule or regulation is in conflict with any provision of this Assurance, SIRIUS XM may comply with such statute, rule or regulation and such action shall not per se constitute a violation of this Assurance.

91. By agreeing to this Assurance, SIRIUS XM reaffirms and attests to the material truthfulness and accuracy of all of the information provided by SIRIUS XM to the Participating States prior to entry of this Assurance. The Participating States' agreement to this Assurance is expressly premised upon the material truthfulness and accuracy of the information provided by SIRIUS XM to the Participating States throughout the course of the investigation of this matter, which information was relied upon by the Participating States in negotiating and agreeing to the terms and conditions of this Assurance.

92. If the Participating States find that SIRIUS XM failed to disclose material information, or made any other material misrepresentation or omission relevant to the resolution of the Participating States' investigation, the Participating States retain the right, at the State's election, to file a motion to seek modification of this Assurance upon proper written notice to SIRIUS XM. The State must first give notice to SIRIUS XM of its proposed modification to give SIRIUS XM an opportunity to discuss the modification with the State before any court proceedings may be instituted. Nothing however shall prevent SIRIUS XM from opposing the State's motion if the Parties cannot reach an agreement.

36

93. To seek modification of this Assurance, SIRIUS XM shall send a written request for modification with a detailed written explanation of the reason for the request to the Ohio Attorney General with simultaneous copies to each Participating State. The Participating States will review such request on a timely basis and within ninety (90) days of the request, and shall provide a written response.

   A. Upon reasonable written request by SIRIUS XM, the Participating States shall meet with SIRIUS XM by phone to discuss a specific written modification request prior to the Participating States' consideration of the request. Further, the Participating States agree to respond to SIRIUS XM, and provide such response within ninety (90) days of receiving SIRIUS XM'S request.

   B. No waiver, modification, or amendment of the terms of this Assurance shall be valid or binding unless made in writing, signed by the Parties, and then only to the extent set forth in such written waiver, modification or amendment. To the extent that state law requires a waiver, modification or amendment of this Assurance to be approved and entered by the Court, the State and SIRIUS XM agree to use their best efforts to obtain Court approval.

   C. The State shall not take any action to enforce the terms of the particular provision for which a modification is being requested, other than for prior violations of said terms, with respect to such waiver, modification, or amendment while the Parties are seeking Court approval of the same, if required. In the event that Court approval and entry of a waiver, modification or amendment of this Assurance is required under state law and the Court does not approve such waiver, modification or amendment, said waiver, modification or amendment shall be null and void; provided, however, nothing herein shall be construed to prohibit or otherwise restrict either Party's right to seek reconsideration or review of, or to appeal a decision not to approve such waiver, modification or amendment. Nothing in this Paragraph shall limit the

37

State from pursuing any action against SIRIUS XM for failure to comply with this Assurance, nor shall it release liability for any violations prior to or during the waiver, modification, or amendment period.

94. Nothing in this Assurance shall be construed to require, prevent or prohibit the Parties from agreeing to extend any time period set forth herein, including but not limited to any notice requirement specified herein.

95. SIRIUS XM represents that it has fully read this Assurance and understands the legal consequences involved in signing this Assurance.

96. SIRIUS XM represents and warrants that it is represented by legal counsel; it has been fully advised of its legal rights in this matter; and the corporate signatory signing below is fully authorized to act on behalf of SIRIUS XM.

97. SIRIUS XM shall provide a copy of this Assurance or a complete and accurate summary of the material terms and conditions of this Assurance to its senior executive officers who have managerial responsibility over the subject matter of this Assurance. SIRIUS XM shall not be required to advise any other person or entity regarding the terms of this Assurance.

98. SIRIUS XM shall comply with the terms and conditions of this Assurance as of the Effective Date, unless indicated otherwise in this Assurance or agreed to in writing by SIRIUS XM and the Executive Committee.

99. SIRIUS XM shall not participate, directly or indirectly, in any activity, or form a separate corporation or entity for the purpose of engaging in acts or practices in whole or in part within the State, that are prohibited by this Assurance or for any other purpose that would otherwise circumvent any part of this Assurance.

100. Acceptance of this Assurance by the State shall not be deemed approval by the State of any of the acts or practices of SIRIUS XM, as described in this Assurance. Further, neither SIRIUS XM

nor anyone acting on its behalf shall state or imply or cause to be stated or implied that the State, or any other governmental unit, has approved, sanctioned, or authorized any of SIRIUS XM's acts or practices.

101. This Assurance contains the entire agreement between the Parties. In the event that any term, provision, or section of this Assurance, is determined to be illegal or unenforceable, that determination shall have no effect on the remaining terms, provisions, and sections of this Assurance which shall continue in full force and effect.

102. Any notices required to be sent to the State or SIRIUS XM by this Assurance shall be sent by United States Certified Mail, Return Receipt Requested, or other nationally recognized courier service that provides for tracking services and identification of the person signing for the document. Notice may also be delivered by facsimile, provided that the same is promptly followed with delivery by Certified Mail or other nationally recognized courier service, as set forth above. The documents shall be sent to the following addresses:

For the State of Nebraska:
Abigail M. Stempson
Assistant Attorney General
Consumer Protection Division
2115 State Capitol
Lincoln, NE 68509-8920

and

For the Executive Committee:
Teresa Heffernan
Assistant Attorney General
Office of the Ohio Attorney General
30 E. Broad St., 14th Floor
Columbus, Ohio 43215

For SIRIUS XM:
Patrick L. Donnelly
Executive Vice President and
General Counsel
Sirius XM Radio Inc.
1221 Avenue of the Americas
New York, New York 10020

and

Clayton S. Friedman
Manatt, Phelps & Phillips LLP
695 Town Center Dr.
Fourteenth Floor
Costa Mesa, CA 92626

103. If the State receives a request for documents provided by SIRIUS XM relating to this Assurance or the negotiations resulting in this Assurance, or for any documents, materials, reports or information specified by or required herein, the State shall comply with applicable

39

public disclosure laws and provide reasonable notice to SIRIUS XM consistent with the framework of the State's public disclosure law(s). SIRIUS XM has asserted that such documents include confidential or proprietary information as defined by law and has, or will, specifically designate in good faith such documents as confidential.

104. Within thirty (30) days of the Execution Date, SIRIUS XM shall provide each third party who offers, Advertises, and/or sells Services with a copy or notice and description of this Assurance.

105. If SIRIUS XM discovers, that any third party described in Paragraph 104 is violating this Assurance, SIRIUS XM shall send notice to the third party requesting that it cease and desist from the violation(s). SIRIUS XM shall conduct an investigation of a third party upon written notice by the State that the third party is violating an applicable provision of this Assurance. SIRIUS XM shall advise the State of the results of its investigation.

106. SIRIUS XM shall maintain policies and procedures, and exercise any contractual right it may have, and take appropriate action, to require third-parties to use its Advertising and marketing materials in a manner consistent with the requirements of this Assurance. Appropriate action shall be determined by the nature and circumstances of the violation, including but not limited to the pattern and/or severity of the conduct and may include one or more of the following remedies:

A. Training or re-educating the third party on the terms of its agreement with SIRIUS XM, including SIRIUS XM's standard policies, the terms of this Assurance and the consequences of the third party's failure to comply with the terms of this Assurance in the future;

B. Withholding payments or compensation;

C. Imposing monetary fines;

D. Placing the third party on probation or other appropriate and reasonable discipline under the circumstances;

E. Suspending the right to Advertise for a period of time; and

F. Termination.

107. As of the Effective Date, with respect to Advertising or marketing that solely and exclusively relates to the subject matter of this Assurance, if SIRIUS XM complies with this Assurance, SIRIUS XM shall not be liable under this Assurance for its non-compliance with the terms and conditions of this Assurance, so long as SIRIUS XM can demonstrate that it has made reasonable efforts to remove or amend such Advertising or marketing within its control to comply with the requirements of the Assurance. SIRIUS XM shall not be liable under this Assurance for failing to prevent the re-publication of pre-existing Advertising or marketing that does not comply with this Assurance by independent third-parties or parties who are not subject to SIRIUS XM's control, so long as SIRIUS XM has complied with Paragraphs 25 through 27 of this Assurance, and otherwise makes reasonable efforts to prevent such re-publication, including but not limited to, exercising any available contractual rights, and where no contractual relationship exists, requesting in writing that the third party terminate the re-publication of such advertising or marketing. The burden is on SIRIUS XM to establish that any such Advertising or marketing solely and exclusively relates to the subject matter of this Assurance and to demonstrate its reasonable efforts to remove or amend such Advertising or marketing.

108. SIRIUS XM shall exercise any rights available to it under a contract or by any other agreement with a third party to require the third party to comply with the terms and conditions of this Assurance, if applicable.

109. SIRIUS XM shall not be liable for conduct of third parties not operating on behalf of SIRIUS XM or otherwise controlled by SIRIUS XM that violates the terms of this Assurance.

110. The titles and headers in each section of this Assurance are used for convenience purposes only and are not intended to lend meaning to the actual terms and conditions of this Assurance.

41

111. This Assurance shall not be construed against the "drafter" because all Parties participated in the drafting of this Assurance.

112. This Assurance may be executed in counterparts, each of which shall constitute an original counterpart hereof and all of which together shall constitute one and the same document. One or more counterparts may be delivered by facsimile or electronic transmission, or a copy thereof, with the intent that it or they shall constitute an original counterpart hereof.

113. Nothing in this Assurance shall be construed as relieving SIRIUS XM of its obligation to comply with all applicable state and federal laws, regulations or rules.

114. This Assurance may only be enforced by the Parties hereto.

## IX.    RELEASE

115. By execution of this Assurance and following a full and complete payment to the Participating States, the Attorney General of the State of Nebraska releases and forever discharges, to the fullest extent of the law, SIRIUS XM from the following: all civil claims, causes of action, damages, restitution, fines, costs, and penalties that the Nebraska Attorney General could have asserted against SIRIUS XM prior to the Execution Date under the Consumer Protection Act and the Uniform Deceptive Trade Practices Act based on the allegations contained in the State's Position in this Assurance or addressed by the terms of this Assurance, but limited to the extent of the Application of the Assurance as set forth in Paragraph 23 (collectively the "Released Claims"). Released Claims do not include claims pursuant to any other statute or regulation (including, without limitation, Do Not Call laws, rules, and regulations or telemarketing laws, regulations, rules, or statutes, including those under the Consumer Statutes set forth on Exhibit A - 1, state or federal antitrust laws, state or federal securities law, environmental laws, tax laws, and criminal statutes and codes), nor do they include actions or proceedings brought pursuant to State consumer protection laws or statutes alleging violations that are not alleged by the State's

42

Position in this Assurance or addressed by the terms of this Assurance, but limited to the extent of the Application of the Assurance as set forth in Paragraph 23.

## X.    MONITORING FOR COMPLIANCE

116. For a period of six (6) years from the Effective Date, upon written request by the State, SIRIUS XM shall provide copies of SIRIUS XM's business records or documents pertaining to or demonstrating compliance with the terms of this Assurance within forty-five (45) days of the State's written request. SIRIUS XM shall make any requested information available at the Office of the Attorney General of the State or at another location within the State if agreed upon by the State and SIRIUS XM. During the forty-five (45) day period, SIRIUS XM shall have the right to object to the scope or reasonableness of the request by the Attorney(s) General. This provision shall not limit the State's right to obtain documents, records, testimony or other information pursuant to other provisions of this Assurance or any State statute, rule, or regulation.

117. For three (3) years from the Execution Date, under the terms of this Assurance, the State has the right to test shop SIRIUS XM for the purpose of confirming compliance with this Assurance. The test shoppers are not required to disclose that they are representatives of the Participating States when making contact with SIRIUS XM. Further, SIRIUS XM is on notice that the Participating States may unilaterally choose to record any or all aspects of its solicitations or visits with SIRIUS XM in audio and/or video form without notice to SIRIUS XM. Each Participating State may request, once per year, for SIRIUS XM to void any reasonable number of sales that are commenced by test shoppers, cancel any agreements tied to those sales, and return any such monies paid by test shoppers upon notification that there was test shopping conducted by the Participating States.

118. As consideration for the relief agreed to herein, if the State determines that SIRIUS XM has failed to comply with any of the terms and conditions of this Assurance, and if the State

determines, in its sole discretion, that the failure to comply does not threaten the health or safety of the citizens of the State or does not create an emergency requiring immediate action, the State shall notify SIRIUS XM in writing of its failure to comply. SIRIUS XM shall then have fifteen (15) business days after receipt of the written notice to provide a written response to the State. The response shall be signed by one of SIRIUS XM's senior executive officers and contain, at a minimum, one of the following:

A. A statement explaining why SIRIUS XM believes it is in compliance with the Assurance;

B. A statement explaining how the alleged breach occurred, and how it will be or has been corrected; or

C. A statement explaining that the alleged breach cannot be reasonably corrected within fifteen (15) business days from receipt of the notice but that:

    i.   SIRIUS XM has begun to take action to correct the alleged breach (with an explanation of the corrective action it is taking);

    ii.  SIRIUS XM is pursuing corrective action with reasonable and due diligence; and

    iii. SIRIUS XM has provided the State with a detailed and reasonable time frame for correcting the alleged breach.

Upon request by SIRIUS XM, a representative of the Attorney General of the State shall meet with SIRIUS XM at SIRIUS XM's expense to discuss the alleged failure to comply or SIRIUS XM's response thereto. In considering whether a violation occurred, the Attorney General of the State agrees to take into consideration any information presented by SIRIUS XM, including the then-current Advertising industry guidelines, practices and customs, reasonable consumer Advertising expectations, and technological requirements and parameters for any Advertisement subject to the requirements of this Assurance. The State will consider the information presented by SIRIUS XM, but is not bound to accept or agree with this information. Unless prohibited by

44

State law, no corrective action by SIRIUS XM shall prohibit any legal action that the State may pursue based on SIRIUS XM's failure to comply with this Assurance nor shall it release liability for any violations prior to the notice or during the time of consideration by the State.

## XI.    PAYMENT OF COURT COSTS

119. Upon written request by the Participating States, SIRIUS XM shall pay all court costs incurred in connection with the execution of this Assurance, if any, up to a maximum amount of $250.00 per State.  Any reasonable delay in paying such costs shall not be punishable by contempt.

## XII.    NEBRASKA SPECIFIC PROVISIONS

120. Pursuant to Neb. Rev. Stat. § 59-1610, proof of failure to comply with this Assurance shall be prima facie evidence of a violation of the Consumer Protection Act.  Furthermore, pursuant to Neb. Rev. Stat. § 87-303.05(2), proof by a preponderance of evidence of a violation of this Assurance shall constitute prima facie evidence of a deceptive practice as listed in Neb. Rev. Stat. §§ 87-302 or 87-303.01 in any civil action or proceeding thereafter commenced by the Attorney General.

**WHEREFORE**, each undersigned representative of the State and SIRIUS XM certifies that he or she is fully authorized to enter into the terms and conditions of this Assurance and legally bind such party to its terms.  The following signatures are affixed hereto as of the dates written below in agreement hereof.

45

**JOINTLY APPROVED FOR ENTRY AND SUBMITTED BY:**

**THE STATE OF NEBRASKA,** ex rel.
JON BRUNING, Attorney General

By:    Jon Bruning, Attorney General, No. 20351

By:    *Abigail M. Stempson*

      Abigail M. Stempson, No. 23329
      Assistant Attorney General
      2115 State Capitol
      Lincoln, NE 68509-8920
      Phone: (402) 471-2683
      Fax: (402) 471-4725
      abigail.stempson@nebraska.gov
      *Counsel for State of Nebraska*

Date:    *November 20, 2014*

**SIRIUS XM RADIO INC.**

By: _____
PATRICK L. DONNELLY
Sirius XM Radio Inc.
1221 Avenue of the Americas
New York, New York  10020

*Executive Vice President and General Counsel*

Date: _December 1, 2014_____

By: _____
CLAYTON S. FRIEDMAN
MICHAEL YAGHI
Manatt, Phelps & Phillips
695 Town Center Drive, Floor 14
Costa Mesa, CA  92626
714.338.2704 (telephone)
714.371.2573 (facsimile)
cfriedman@manatt.com
myaghi@manatt.com

*Counsel for Sirius XM Radio Inc.*

Date: _12/1/14_____

By: _____
KERMIT A. BRASHEAR
Brashear LLP
North Old Mill
711 N. 108 Court
Omaha, NE 68154-1714

*Local Counsel for Sirius XM Radio Inc.*

Date: _11/20/14_____

47

# EXHIBIT A

1. Alabama
2. Alaska
3. Arizona
4. Arkansas
5. Colorado
6. Connecticut
7. Delaware
8. District of Columbia
9. Georgia
10. Idaho
11. Illinois
12. Indiana
13. Iowa
14. Kansas
15. Kentucky
16. Louisiana
17. Maine
18. Maryland
19. Massachusetts
20. Michigan
21. Minnesota
22. Mississippi
23. Missouri
24. Montana
25. Nebraska
26. Nevada
27. New Hampshire
28. New Jersey
29. New Mexico
30. North Carolina
31. North Dakota
32. Ohio
33. Oklahoma
34. Oregon
35. Pennsylvania
36. Rhode Island
37. South Carolina
38. South Dakota
39. Tennessee
40. Texas
41. Utah
42. Vermont

43. Virginia
44. Washington
45. West Virginia
46. Wisconsin

## EXHIBIT A-1

1. Alabama Deceptive Trade Practices Act, Alabama Code Section 8-19-1, et seq.
2. Alaska Unfair Trade Practices and Consumer Protection Act, AS 45.50.471 et seq.
3. Arizona Consumer Fraud Act, A.R.S. §§ 44-1521, et seq.
4. Arkansas Code Ann. 4-88-101 et seq.
5. Colorado Consumer Protection Act, Colorado Revised Statutes § 6-1-101, et seq.
6. Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110b, et seq.
7. Delaware Code Ann. Tit. 6, §§ 2511 to 2536.
8. District of Columbia D.C. Code § 28-3901 et seq. (2001).
9. Georgia Fair Business Practices Act of 1975, O.C.G.A. § 10-1-390 et seq.
10. Idaho Consumer Protection Act, Idaho Code Section 48-601 et seq.
11. Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/1, et seq. and 601/1, et seq.
12. Indiana Deceptive Consumer Sales Act, Indiana Code 24-5-0.5-1 et. seq.
13. Iowa Consumer Fraud Act, Iowa Code § 714.16.
14. Kansas Consumer Protection Act, K.S.A. 50-623 et seq.
15. Kentucky Consumer Protection Act, K.R.S. 367.110 et seq.
16. Louisiana Unfair Trade Practices and Consumer Protection Law, La. R.S. 51:1401, et seq.
17. Maine Unfair Trade Practices Act, 5 M.R.S. §§207 and 209.
18. Maryland Consumer Protection Act, Md. Code Ann., Com. Law §§ 13-101 through 13-501 (2013 Repl. Vol.).
19. Massachusetts M.G.L. c. 93A, Section 1 et seq.
20. Michigan Consumer Protection Act is MCL 445.901, et seq.
21. Minnesota Consumer Fraud Act, Minn. Stat. §§ 325F.68 and 325F.69, Minnesota Deceptive Trade Practices Act, Minn. Stat. § 325D.48, and Minnesota False Statement in Advertising Act, Minn. Stat. § 325F.67.
22. Mississippi Consumer Protection Act, § 75-24-1 through § 75-24-27 (1972, as amended).
23. Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, et seq.
24. Montana Unfair Trade Practices and Consumer Protection Act (MUTCPA), Mont. Code Ann. § 30-14-101 et seq.
25. Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1601 et seq., and the Uniform Deceptive Trade Practices Act, Neb. Rev. Stat. § 87-301 et seq.
26. Nevada Deceptive Trade Practices Act, NRS 598.0903 et seq.
27. New Hampshire Rev. Stat. Ann. 358-A.
28. New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq.
29. New Mexico Unfair Practices Act, NMSA § 57-12-1 et seq. (1967), NMSA § 57-15-1, et seq., and N. M. Admin. Code 12.2.11.
30. North Carolina Unfair and Deceptive Trade Practices Act, N.C.G.S. 75-1.1 et seq.
31. N.D.C.C. §§ 51-12-08 et seq. and 51-15-01 et seq.
32. Ohio Consumer Sales Practices Act, R.C. 1345.01 et seq.
33. Oklahoma Consumer Protection Act, 15 O.S. §§ 751 *et seq*. ("OCPA")
34. Oregon Unlawful Trade Practices Act, ORS §§ 646.605 et seq. and 646A.295.
35. Pennsylvania Unfair Trade Practices and Consumer Protection Law, 73 P.S. § 201-1, et seq.

36. Rhode Island Deceptive Trade Practices Act, R.I. Gen. Laws § 6-13.1-1, et seq.

37. South Carolina Unfair Trade Practices Act, S.C. Code Ann. § 39-5-10 et seq.

38. South Dakota Deceptive Trade Practices Act, SDCL Chs. 37-24-6 (as amended by 2014 South Dakota Laws SB 23 on March 14, 2014)(Effective July 1, 2014), 37-24-23 (as amended by 2014 South Dakota Laws SB 23 on March 14, 2014)(Effective July 1, 2014), and 37-24-26 (as amended by 2014 South Dakota Laws SB 23 on March 14, 2014)(Effective July 1, 2014).

39. Tennessee Consumer Protection Act of 1977, Tenn. Code Ann. § 47-18-101 et seq.

40. Tex. Bus. & Com. Code Ann. § 17.41 et seq.

41. Utah Consumer Sales Practices Act, Utah Code Ann. § 13-11-1 et seq.

42. Vermont Consumer Fraud Act, 9 V.S.A. §§ 2451-2466.

43. Virginia Consumer Protection Act, Va. Code §§ 59.1-196 through 59.1-207.

44. Revised Code of Washington RCW 19.86.020.

45. West Virginia Consumer Credit and Protection Act, W.Va. Code §§ 46A-1-101 et seq.

46. Wisconsin Stat. §§ 100.18, 100.195 and 100.20.

**EXHIBIT B**
**(Instructions for Submitting Complaint Form to SiriusXM)**

## STATE ATTORNEYS GENERAL - SIRIUS XM
## CONSUMER RESOLUTION PROGRAM

[DATE]

Consumer Name
Address
City, State, Zip

Dear Consumer:

Pursuant to our [DATE] settlement with your State's Attorney General, we have received your complaint dated [DATE]. Under the terms of the settlement, and to assist SiriusXM in resolving the concerns raised by your complaint, you must complete and sign the enclosed Form, and mail or fax it to SiriusXM at the following address or fax number:

SiriusXM
[Insert street address or P.O. Box]
[Insert City, State and Zip Code]
[Insert Fax Number]

Your Form must be postmarked within ninety (90) days of the receipt of this letter to be eligible to participate in this program. In addition to completing and signing the enclosed Form, you should also include any documents that you believe support your request. To the extent that you have it, include any previous Better Business Bureau, Federal Trade Commission, state consumer complaint handling entity, or Attorney General complaint-related documents. You may feel free to cross-out any personal information such as social security numbers or credit card account numbers. If your Form is not postmarked within ninety (90) days of the receipt of this letter, or is found to be ineligible, it will be rejected.

If you have any questions about the Consumer Resolution Program or the enclosed Form, please include them on a separate piece of paper and send them to the address or fax number listed above along with your completed Form. SiriusXM may contact you regarding your questions.

PLEASE RETAIN A COPY OF YOUR COMPLAINT, COMPLETED FORM AND ANY ATTACHMENTS OR DOCUMENTS YOU SEND TO US.

Sincerely,


SiriusXM

Enclosure

## EXHIBIT C

### STATE ATTORNEYS GENERAL - SiriusXM
### CONSUMER RESOLUTION FORM
**Print or Type**

To the extent possible, please provide all requested information and answer each question. If you do not have the information requested or know the answer, please write unknown or leave the line blank.

## YOUR CONTACT INFORMATION

Name: _____

Address: _____

City: _____

State: _____ Zip Code: _____

Email: _____

Phone: _____

**SiriusXM will not contact you for marketing purposes solely as a result of completing this Form.**

## ACCOUNT INFORMATION* (for all radios involved in your complaint)
*if you have information about more than three radios, attach additional pages as necessary

Account #(s): _____

Account #(s): _____

Account #(s): _____

1. Radio ID/ESN       Activation Date       Cancelation Date:

   _____       _____       _____

   Did you start your SiriusXM service with a free trial? (yes/no) _____

   Did you purchase SiriusXM service after the free trial period? (yes/no) _____

   How did you activate service? (check one)

   Phone _____       Mail _____       Online _____

   Did you attempt to cancel your SiriusXM service? (yes/no) _____

If yes, were you successful in cancelling your service? (yes/no) _____

Do you currently have an active subscription with SiriusXM? (yes/no) _____

Explain any reasons or issues that caused you to cancel your service on this radio?

_____

_____

_____ .

2. Radio ID/ESN         Activation Date         Cancelation Date:

_____         _____         _____

Did you start your SiriusXM service with a free trial? (yes/no) _____

Did you purchase SiriusXM service after the free trial period? (yes/no) _____

How did you activate service? (check one)

Phone _____         Mail _____         Online _____

Did you attempt to cancel your SiriusXM service? (yes/no) _____

If yes, were you successful in cancelling your service? (yes/no) _____

Do you currently have an active subscription with SiriusXM? (yes/no) _____

Explain any reasons or issues that caused you to cancel your service on this radio?

_____

_____

_____ .

3. Radio ID/ESN         Activation Date         Cancelation Date:

_____         _____         _____

Did you start your SiriusXM service with a free trial? (yes/no) _____

Did you purchase SiriusXM service after the free trial period? (yes/no) _____

How did you activate service? (check one)

Phone _____         Mail _____         Online _____

Did you attempt to cancel your SiriusXM service? (yes/no) _____

If yes, were you successful in cancelling your service? (yes/no) _____

Do you currently have an active subscription with SiriusXM? (yes/no) _____

Explain any reasons or issues that caused you to cancel your service on this radio?

_____

_____

_____ .

Use additional pages to describe additional accounts, if necessary.

OTHER ACCOUNT INFORMATION (not related to this complaint)

Account #(s):        _____

Account #(s):        _____

1. Radio ID/ESN        Activation Date        Cancelation Date:

    _____        _____        _____

2. Radio ID/ESN        Activation Date        Cancelation Date:

    _____        _____        _____

## ORIGINAL COMPLAINT DETAILS

Is this complaint one that you filed with SiriusXM previously or the Better Business Bureau, the Federal Trade Commission, a state or local consumer complaint handling entity, or your Attorney General? (yes/no) _____

If so, what date (month and year) did you file this complaint originally? _____

Did you receive a satisfactory resolution to your complaint? (yes/no)_____

## UNRESOLVED COMPLAINT DETAILS

Explain why you think your complaint is unresolved or not fully resolved.

_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____
_____ .

Use additional pages if necessary.

I request the following relief (please be very specific by explaining in detail the amount you believe you are owed; the credit you may be requesting be placed on your account or refund you are requesting; or any other relief you believe you are justified in asking for related to your complaint against SiriusXM):

_____
_____
_____
_____
_____
_____
_____
_____
_____ .

Use additional pages if necessary.

Provide a detailed explanation of why you believe you are entitled to the relief requested above: _____

_____
_____
_____

.

_____

_____

_____

_____

_____

_____ .

Use additional pages if necessary.

In addition to my original complaint and records, I have attached additional documents in support of my request (Include copies only as original documents will not be returned):

[ ] Yes

[ ] No

## CERTIFICATION

**By signing and dating this form, I attest that all information provided by me in this Form (and attachments, if applicable) is true to the best of my knowledge and belief. I have read and understood the Instructions and Complaint Form.**

Signed:  _____

Dated:  _____

Print name:  _____

PLEASE RETAIN A COPY OF THIS FORM AND ANY ATTACHMENTS YOU SEND TO SIRIUSXM.

**EXHIBIT D**
**(Identifiable Loss Exceeds $50)**

## STATE ATTORNEYS GENERAL – SIRIUS XM
## CONSUMER RESOLUTION PROGRAM

[DATE]

Consumer Name
Address
City, State, Zip

After reviewing your complaint and the Form you submitted to SiriusXM under the State Attorneys General - SiriusXM Consumer Resolution Program, SiriusXM has determined that your complaint is not eligible under the Program because _____.  You may appeal this decision by submitting the complaint for re-review to a neutral third-party Facilitator who will determine if you qualify as eligible under the Program.  In order to request a re-review, you must submit the original Form by mail or fax to the Facilitator at the following address by no later than [DATE]:

SiriusXM FACILITATOR
[Insert street address or P.O. Box]
[Insert City, State and Zip Code]
[Insert Fax Number]

In addition to re-submitting the Form, you should also include any documents that you believe support your position that you are eligible for relief under the Program.  Please note that if your Form is not received by the Facilitator in a timely manner, or is found to be ineligible, it will be rejected by the Facilitator.

If you have any questions about the Program, please include them on a separate piece of paper and send them to the address or fax number listed above along with the Form.

Please keep a copy of all materials you submit to the Facilitator for your records.

Sincerely,


SiriusXM

**EXHIBIT E**
**(Identifiable Loss $50 or Less)**

## STATE ATTORNEYS GENERAL – SIRIUS XM
## CONSUMER RESOLUTION PROGRAM

[DATE]

Customer Name
Address
City, State, Zip

Re: Your Sirius XM Complaint and Form

Dear [Customer]:

SiriusXM has reviewed your consumer complaint and the Form you submitted under the

State Attorneys General – SiriusXM Consumer Resolution Program. After reviewing your complaint

and Form you submitted to SiriusXM, SiriusXM determined that you are not eligible for relief under

the Program because _____.

A copy of this letter or a summary of the status of your complaint and Form has also been

provided to your State Attorney General. Thank you again for bringing your concerns to our

attention.

Sincerely,


SiriusXM

## EXHIBIT F1
## (If SIRIUS XM Agrees with the Relief Requested –
## No Phone Interaction)

### STATE ATTORNEYS GENERAL - SIRIUS XM
### CONSUMER RESOLUTION PROGRAM

[DATE]

Customer Name
Address
City, State, Zip

Re: SiriusXM Resolution of your Eligible Complaint

Dear [Customer]:

  After reviewing your consumer Form, SiriusXM is pleased to inform you that you are eligible under the Attorneys General - SiriusXM Consumer Resolution Program. The relief you requested in your complaint and Form has been provided. Specifically, SiriusXM agrees to resolve your concern(s) as follows:

_____

_____

_____.

  SiriusXM believes this resolves your concerns as requested. However, if SiriusXM has missed something, please call us at [insert TFN] with any questions. You should make a note of the date and who you spoke with regarding whatever SiriusXM missed, if anything.

  Thank you again for bringing your concerns to our attention.

        Sincerely,

        SiriusXM

# EXHIBIT F2
## (If SiriusXM Agrees with the Relief Requested –
## Via Phone Interaction)

## STATE ATTORNEYS GENERAL – SIRIUS XM
## CONSUMER RESOLUTION PROGRAM

[DATE]

Customer Name
Address
City, State, Zip

Re: <u>SiriusXM's Resolution of your Eligible Complaint</u>

Dear [Customer]:

It was a pleasure speaking with you recently regarding your request in the State

Attorneys General – SiriusXM Consumer Resolution Program.  I am happy that

SiriusXM was able to resolve the issues you raised about your SiriusXM service to your

satisfaction as follows:

_____

_____

_____.

I believe this reflects the discussion on the phone, but if SiriusXM has missed

something, please call us at [insert TFN] to discuss.  You should make a note of the date,

time and who you spoke with regarding the matters not addressed, if any.

Thank you again for bringing your concerns to our attention.

Sincerely,

SiriusXM

**EXHIBIT G**
**(Identifiable Loss $100 or Less)**

## STATE ATTORNEYS GENERAL - SIRIUS XM
## CONSUMER RESOLUTION PROGRAM

[DATE]

Customer Name
Address
City, State, Zip

Re: SiriusXM Proposed Resolution of your Eligible Complaint

Dear [Customer]:

It was a pleasure speaking with you regarding your request in the State Attorneys General - SiriusXM Consumer Resolution Program and I am sorry that SiriusXM was unable to come to an agreement to resolve the issues you raised about your SiriusXM service. In an attempt to resolve your concern, SiriusXM would like to extend the following new and final offer:

_____

_____

_____.

SiriusXM believes this new and final offer is fair and reasonable, and hopes that you will give it careful consideration. If you would like to resolve the issues raised in your complaint and Form on these terms, call us at [insert TFN]. SiriusXM will not implement the terms of this offer unless we hear from you.

A copy of this letter or a summary of the status of your complaint has also been provided to your State Attorney General. Thank you again for bringing your issue to our attention.

Sincerely,

SiriusXM

**EXHIBIT H**
**(Identifiable Loss Exceeds $100)**

## STATE ATTORNEYS GENERAL – SIRIUS XM
## CONSUMER RESOLUTION PROGRAM

[DATE]
Customer Name
Address
City, State, Zip

Re: Proposed SiriusXM Resolution of your Eligible Complaint

Dear [Customer]:

It was a pleasure speaking with you regarding your request in the State Attorneys General – SiriusXM Consumer Resolution Program. As discussed, SiriusXM has reviewed your complaint and we're sorry that we were unable to come to an agreement regarding the issues you raised about your SiriusXM service.

Under the terms of the Agreement between your state Attorney General and SiriusXM, your complaint and Form will be submitted to the independent Facilitator for review and a decision.

Enclosed is a copy of the consumer record that SiriusXM will provide to the Facilitator as well as any additional information not previously provided to you that SiriusXM will submit to the Facilitator. If you wish to request a telephonic review with the Facilitator, please contact [X] at [insert TFN]. Make a note for your records of the date and time of your call and the individual you speak with regarding your request.

While your complaint is pending with the Facilitator, SiriusXM may contact you to discuss whether it is possible to resolve your complaint before it is reviewed by the Facilitator. You have the choice to have this discussion or advise SiriusXM that your preference is to

proceed with the hearing.  You are also not required to speak with SiriusXM during this period
of time.

Sincerely,

SiriusXM

Enclosure

**EXHIBIT I1 – No Phone Interaction**

## STATE ATTORNEYS GENERAL - SIRIUS XM
## CONSUMER RESOLUTION PROGRAM

[DATE]

Customer Name
Address
City, State, Zip

Re: <u>Proposed SiriusXM Resolution of Your Complaint</u>
<u>Pending Facilitator Review</u>

Dear [Customer]:

While your complaint is pending review by the Facilitator in the State Attorneys General - SiriusXM Consumer Resolution Program, SiriusXM has reviewed it again and would like to extend the following new offer: _____

_____

_____.

SiriusXM believes this offer is fair and reasonable, and we hope that you will give it careful consideration. If you would like to resolve your complaint on these terms, or discuss further, please call us at [insert TFN]. SiriusXM will not implement the terms of this new offer unless and until we hear from you.

Since your complaint is pending with the Facilitator, you do not have to accept this offer and may elect to proceed with your right have your matter reviewed by the Facilitator.

Thank you again for bringing your issue to our attention.

Sincerely,

SiriusXM

**EXHIBIT 12 - Phone Interaction**

## STATE ATTORNEYS GENERAL - SIRIUS XM
## CONSUMER RESOLUTION PROGRAM

[DATE]

Customer Name
Address
City, State, Zip

Re: Proposed SiriusXM Resolution of Your Complaint
Pending Facilitator Review

Dear [Customer]:

SiriusXM is pleased that we spoke with you recently regarding your request in the State

Attorneys General - SiriusXM Consumer Resolution Program. While your Complaint was

pending review by the Facilitator, I am happy that SiriusXM was able to resolve the issues you

raised about your SiriusXM service as follows:

_____

_____

_____

I believe the above reflects the agreement we reached on the phone. In light of this

agreement, your request will no longer be reviewed by the Facilitator. If this letter does not

reflect our agreement, please call us at [insert TFN].

Sincerely,

SiriusXM

**IN THE DISTRICT COURT OF LANCASTER COUNTY, NEBRASKA**

STATE OF NEBRASKA, ex rel. Jon
Bruning, Attorney General,

        Relator,

v.

SIRIUS XM RADIO INC.,

        Respondent.

)
)
)
)
)
)
)
)
)
)
)
)

CI 14- _____ 4187 _____

**CONSENT TO ENTRY OF
ORDER APPROVING
ASSURANCE OF
VOLUNTARY COMPLIANCE**

**COMES NOW** Sirius XM Radio Inc., as defined in the Assurance of Voluntary Compliance (hereinafter Respondent), submitting to the personal and subject matter jurisdiction of this Court, and, being fully advised of the contents of the Application for Approval of Assurance of Voluntary Compliance and the Assurance of Voluntary Compliance attached thereto and incorporated therein, hereby voluntarily consents to the entry of an Order approving said Assurance of Voluntary Compliance. Respondent further understands that pursuant to Neb. Rev. Stat. §§ 59-1610 and 87-303.05, such an Assurance is not considered an admission of a statutory violation for any purpose, but proof of failure to comply with any or all of the Assurance of Voluntary Compliance may result in a civil action or proceeding commenced by the Attorney General for the State of Nebraska.

Respondent further waives its right to appear before the Court and agrees that an Order approving the Assurance of Voluntary Compliance may be entered by the Court.

LANCASTER COUNTY
2014 DEC 4 AM 11:25
CLERK OF THE
DISTRICT COURT



**001465943D02**

DATED this _20_ day of _November_, 2014.

Sirius XM Radio Inc., Respondent,

By: _____

Kermit A. Brashear
Brashear LLP
North Old Mill
711 N. 108 Court
Omaha, NE 68154-1714

*Counsel for Respondent*

2

## IN THE DISTRICT COURT OF LANCASTER COUNTY, NEBRASKA

|   |   |   |
|---|---|---|
| STATE OF NEBRASKA, ex rel. Jon Bruning, Attorney General, | ) ) ) | CI 14- __4187__ |
| Relator, | ) ) | **ORDER APPROVING** |
| v. | ) ) | **ASSURANCE OF VOLUNTARY COMPLIANCE** |
| SIRIUS XM RADIO INC., | ) ) | |
| Respondent. | ) ) | |

---

**NOW**, this matter comes before the Court on the Application for Approval of Assurance of Voluntary Compliance (hereinafter Application); the underlying, incorporated and attached Assurance of Voluntary Compliance (hereinafter Assurance) executed by and between the Relator and Respondent; and the Consent to Entry of Order Approving Assurance of Voluntary Compliance (hereinafter Consent) executed by Respondent, filed contemporaneously therewith.

Relator, the State of Nebraska ex rel. Jon Bruning, Attorney General, is represented by Assistant Attorney General Abigail M. Stempson. Respondent, Sirius XM Radio Inc. is represented by counsel Kermit Brashear of Brashear LLP.

The Court, having considered the above-described Application, Assurance, and Consent, executed pursuant to the Nebraska Consumer Protection Act, Neb. Rev. Stat. § 59-1601 et seq. (hereinafter Consumer Protection Act), and the Uniform Deceptive Trade Practices Act, Neb.

LANCASTER COUNTY
2014 DEC 4 PM 2 41
CLERK OF THE
DISTRICT COURT



001477907D02

Rev. Stat. § 87-301 et seq. (hereinafter Uniform Deceptive Trade Practices Act), and being fully advised in the premises, finds as follows:

1.     The aforesaid Assurance will adequately protect the public interest as expressed in the Consumer Protection Act and the Uniform Deceptive Trade Practices Act.

2.     Respondent has voluntarily consented to the jurisdiction of the Court and to the entry of this Order.

3.     Pursuant to the Assurance, Relator's portion of the settlement funds is $55,540.48 which will be placed in the State Settlement Cash Fund. As provided in the Assurance, the parties acknowledge that the payment described herein is not a fine, civil penalty, or forfeiture.

**IT IS THEREFORE ORDERED, ADJUDGED AND DECREED** that the Assurance of Voluntary Compliance, including all of its terms, executed as of December 1, 2014, by and between the Relator and Respondent, is hereby approved.


DATED this 2 day of December, 2014.

BY THE COURT:

Lancaster County District Court Judge

Andrew Jacobsen

2

Prepared and Submitted By:                    Approved as to Form and Content:

                                              _Brashear_  11/20/14
                                                                    Date

Abigail M. Stempson, No. 23329                Kermit A. Brashear
Assistant Attorney General                    Brashear LLP
2115 State Capitol                            North Old Mill
Lincoln, NE 68509-8920                        711 N. 108 Court
Phone: (402) 471-2683                         Omaha, NE 68154-1714
Fax: (402) 471-4725
abigail.stempson@nebraska.gov                 *Counsel for Respondent*